## Locke v. O'Hara, Secretary of the Commonwealth

*R. H. Locke*, for plaintiff.

*H. J. Woodward*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for Commonwealth.

WOODSIDE, J., April 27, 1942.—This comes before us on a motion to quash an alternative writ of mandamus issued upon Hon. S. M. R. O'Hara, Secretary of the Commonwealth, in the nature of a rule to show cause why she should not accept for filing the nomination

petitions of Robert H. Locke for the office of Representative-at-large in Congress, from Pennsylvania, on the Republican ballot at the coming primary election.

On March 30, 1942, the last day for filing petitions for the several offices to be voted upon at the primary election to be held on May 19, 1942, the Secretary of the Commonwealth received, by mail, the petitions of Robert H. Locke for the office of Representative-at-large in Congress, from Pennsylvania, on the Republican ballot, accompanied by a filing fee of $50 in cash.

On the same day the petitions and cash were returned by the secretary because the filing fee was not paid by "Certified Check or Money Order."

On April 2, 1942, the secretary again received the same petitions for nomination accompanied by a money order for $50, and on the same day the petitions and money order were returned because the last day for filing petitions had passed.

On April 4, 1942, the Secretary of the Commonwealth again received the nomination petitions, together with a money order for $50 and what purported to be a copy of a petition for a writ of mandamus, addressed to the Supreme Court of Pennsylvania.

Subsequently, petitioner mailed his petition for a writ of mandamus to the Prothonotary of Dauphin County without the necessary filing fee, but accompanied by a letter requesting its presentation to the court. This letter was received on April 7th, and upon the payment of the filing fee on April 9th a rule was directed by this court to the Secretary of the Commonwealth, returnable on April 17th.

The records show no service of this rule upon the secretary.

Petitioner claims that a copy of the petition and order was mailed on April 10th, which normally should have been received by the secretary on April 13th, although she claims that no such notice was mailed until April 14th.

On April 15th the secretary filed a motion to quash the writ.

When the case was heard on the return day neither the secretary nor petitioner presented briefs and we gave them until the 21st to do so. It was admitted at the argument that the facts set forth in the petition for the writ are substantially correct and we are treating them as true.

On April 13, 1942, lots were cast by or on behalf of the candidates for the position of their names on the primary ballots in accordance with the provisions of section 916 of the Pennsylvania Election Code, and on the following day the Secretary of the Commonwealth certified to the county board of each county the aforesaid list of candidates, together with the other information required by said section.

Immediately after receiving the certification mailed by the Secretary of the Commonwealth, the county commissioners throughout the State are required to prepare the ballots, and we may assume many are now either printed or in the process of being printed.

If we now allow petitioner to file his nomination petition, the public and the other candidates should have at least some time to examine the petitions and raise any objections to them, which if raised, would have to be disposed of by the court. Furthermore, if we now allowed him to file, there would have to be another drawing for position on the ballot, else where among the seven now seeking the same office would the secretary certify that his name should be placed?

We call attention to these facts to show the absolute necessity of proceeding promptly to raise any such questions as are here presented, and the importance of proceeding carefully in the matter of filing and serving the pleadings.

Even if there were some merit to the contention of petitioner, we would hesitate to grant him relief at this time, feeling that he has been guilty of laches by

his delay in asking for relief and by his loose and dilatory practices in filing and serving pleadings. ·

Regardless of the question of laches we are of the opinion that the secretary properly refused to file the nomination petitions in question.

Prior to the Pennsylvania Election Code of June 3, 1937, P. L. 1333, no fee was required to be paid in connection with the filing of nomination petitions.

Section 913(b) of the Pennsylvania Election Code of 1937, 25 PS §2873, provides, inter alia, as follows:

"Each person filing any nomination petition shall pay, for each petition, at the time of said filing, a filing fee to be determined as follows, and no nomination petition shall be accepted or filed, *unless and until such filing fee is paid by a certified check or money order only.* Said certified checks or money orders shall be made payable to the Commonwealth of Pennsylvania or to the county, as the case may be, and shall be transmitted to the State Treasurer or to the county treasurer . . ." (Italics supplied.)

We think that the intent of the legislature is clearly expressed above. Adding the word "only" to the requirement that the nomination petition should be accompanied by a certified check or money order leaves no doubt of the desire of the legislature to limit payment to these two methods.

The reason for this is not difficult to understand. We are advised by the Secretary of the Commonwealth that she receives for filing for the primary elections in even-numbered years from 1,400 to 2,200 nomination petitions, 70 to 80 percent of which are presented on the last day for filing. The total filing fees received by the secretary during these years varies from $25,000 to $50,000, approximately three fourths of which is received in one day. The office of the Secretary of the Commonwealth is not arranged or prepared either with physical equipment or employes to receive or protect this amount of cash, nor should it be asked to be

for only one day in every two years. Furthermore, it is easy to contemplate the time that would be lost in making change, counting, and protecting cash on the last day for filing.

The legislature might well have also contemplated the possibility of losing cash sent by mail. It is easy to imagine the difficulties which might arise from petitioners claiming that they placed the cash in the envelope when the petitions were mailed, and the Secretary of the Commonwealth finding that the money was not with the petitions when they were taken out of the envelope.

The difficulties of receiving cash do not apply only to the Secretary of the Commonwealth but also to the county commissioners in many of the larger counties. Thousands of petitions for party committeemen in the even-numbered years and the municipal offices in the odd-numbered years are received on the last day for filing petitions in some of the larger counties.

It appears that the precise question raised here has never been determined, although in Snyder v. Lackawanna County Commissioners, 33 D. & C. 277, reference was made to it. We think, however, that the intent of the legislature to prohibit the payment of cash is clearly expressed and the reason for doing so is sound.

The question of whether a State has a right to require payment of filing fees in a particular method other than "legal tender" as defined by Congress was not specifically raised by petitioner in this case. It seems to us, however, that such power exists and is not prohibited by the Federal Constitution and the Acts of Congress relating to "legal tender."

It is said that although Congress declared notes of the United States legal tender for all debts, public and private, a State may require its taxes to be paid in coins, and that such taxes will not be discharged by the tender of notes: Bouvier's Law Dictionary (3rd revision) 1912, "Legal Tender."

If the secretary properly refused to file the nomination petitions in question on March 30th, because they were not accompanied by a certified check or money order, she was justified in refusing to receive them when accompanied by a money order on April 2nd because the time for filing said petition had expired.

Section 913(d) of the Pennsylvania Election Code provides:

"(d) All nomination petitions shall be filed at least fifty (50) days prior to the primary."

The date of the primary, fixed by section 603 of the Election Code, falls on May 19th this year. The last day for filing nomination petitions was, therefore, March 30, 1942.

The deadline for filing nomination petitions is mandatory, and must be strictly adhered to.

In Twibill v. Woods, 20 Dauph. 266, this court held that nomination petitions thrown through the transom of the closed office of the Secretary of the Commonwealth at 11:50 p.m. of the last day for filing said petitions were too late and could not be filed by the secretary. In the case of Hulings v. Woods, 20 Dauph. 260, this court held that when nomination petitions were mailed in time to reach the Secretary of the Commonwealth before closing on the last day for filing petitions, but did not actually arrive until the following day, the petitions were too late and could not be filed. The court there said (p. 265):

"It is suggested that the petitions should be treated as filed in due time because by the ordinary course of the mails they should have been delivered to the Secretary's office before the expiration of the period for filing. We do not see our way clear to require this to be done." See also In re Objection to Petition, 26 Luzerne 347.

And now, to wit, April 27, 1942, the motion to quash is sustained and the petition and writ are dismissed at the cost of petitioner.