532 A.2d 917

Phillip Seidman, t/a Phil Seidman Insurance, Petitioner *v.* The Insurance Commissioner of the Commonwealth of Pennsylvania and George F. Grode, Acting Commissioner of the Commonwealth of Pennsylvania, Respondents.

Argued June 12, 1987, before Judge COLINS, and Senior Judges BARBIERI and NARICK, sitting as a panel of three.

*Malcolm H. Waldron, Jr.,* for petitioner.

*Jean M. Callihan,* Assistant Counsel, with her, *Regina L. Matz,* Assistant Counsel, *Linda J. Wells,* Chief of Litigation, and *M. Hannah Leavitt,* Chief Counsel, for respondents.

*Michael A. Dillon,* with him, *William R. Balaban, Balaban and Balaban,* for amicus curiae, Professional Insurance Agents of Pennsylvania, Maryland and Delaware, Inc., and John T. Abram.

OPINION BY SENIOR JUDGE BARBIERI, October 22, 1987:

Phillip Seidman appeals an order of the Insurance Commissioner (Commissioner) suspending his broker's license for ninety days and fining him $5,000.00 for violations of the Insurance Department Act of 1921,[1] Section 4 of the Unfair Insurance Practices Act[2] and a regulation requiring the speedy remittance of premium payments to the Pennsylvania Automobile Insurance Plan[3] (Plan).

Petitioner is a licensed insurance agent and broker in the Commonwealth of Pennsylvania. On May 15, 1985, the Insurance Department filed an Order to Show Cause alleging that on four occasions during January and February of 1984, Petitioner required clients to pay a fee for placement in the Plan and accepted cash for premium payments in violation of Plan rules and 31 Pa. Code §33.29(d). In three of the four instances, the Order to Show Cause also alleged delays between the application date and remittance to the plan.

The Insurance Commissioner found that Petitioner requires each client to sign an agreement stating that

---

[1] Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §§1-321.

[2] Act of July 22, 1974, P.L. 589, 40 P.S. §1171.4.

[3] Section 105 of the No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, formerly 40 P.S. §1009.105(a), repealed by Section 8(a) the Act of February 12, 1984, P.L. 26, provided that the Commissioner shall establish a plan which would provide automobile insurance coverage to individuals who could not conveniently obtain insurance in the voluntary market. The plan which was in effect until October 1, 1984, was known as the Pennsylvania Automobile Insurance Plan. A similar plan, known as the Assigned Risk Plan, was established pursuant to Section 1741 of the Motor Vehicle Financial Responsibility Law, Act of February 12, 1984, P.L. 26, 75 Pa. C. S. §1741. For the sake of simplicity, the Pennsylvania Automobile Insurance Plan will sometimes be referred to as the "Plan".

they agree to pay Phillip Seidman Insurance a twenty dollar fee for the following services: "office consultation, credit evaluation, money order services, record keeping, computer service, telephone inquiry service, claim application service and other related services." The agreement also expressly provides that the client has been informed that no fee is charged for making application for insurance or placing insurance as that is paid to the agency as a commission by the insurer.

Section 21(3) of the Pennsylvania Automobile Insurance Plan provides:

> The Pennsylvania Insurance Department prohibits licensed insurance agents and brokers acting as producers from making any additional charge or charging any fee for the placing of any coverage in the Plan. Producer remuneration shall be limited to the commission allowance on the collected earned premium.

Further, Department regulations provide in pertinent part:

> Upon original applications, premium monies to the producer of record shall be in the form of a postal money order, cashier's check, certified check, or personal check made payable to the 'Pennsylvania Automobile Insurance Plan.' The producer of record shall speedily remit such payment in conformance with the rules of the Plan.

31 Pa. Code §33.29(d).

The Commissioner found that by requiring applicants placed in the Plan to pay a twenty dollar fee, Petitioner was violating Section 21(3) of the Plan rules. The Commissioner found that in 1984, Petitioner's actions in charging a fee to four applicants constituted four separate violations of Section 4 of the Unfair Insurance Practices Act, 40 P.S. §1171.4. Petitioner's license was sus-

pended for ninety days and he was fined $600.00 for each of the four violations.

The Commissioner also found that Petitioner accepted cash payments for premiums for these same four individuals contrary to Section 11(c) of the Plan and 31 Pa. Code §33.29(d), and therefore concluded that Petitioner committed four separate violations of Sections 633 and 633.1 of the Insurance Department Act of 1921, 40 P.S. §§273, 273.1. The Commissioner imposed a second ninety day suspension of Petitioner's license which was to run concurrent with the first suspension and an additional $600.00 fine for each of the four violations. The Commissioner concluded further that Petitioner violated Sections 633 and 633.1 of the Act by failing to speedily remit a premium payment pursuant to 31 Pa. Code §33.29(d) and imposed an additional $200.00 fine.[4]

On appeal Petitioner contends that there is no evidence that he charged applicants a fee for placement in the Plan, that the Plan rules do not prevent him from accepting cash from applicants and purchasing money orders on their behalf, that he is entitled to accept cash pursuant to Section 11(c) of the Plan itself, the United States Constitution and 42 U.S.C. §5103,[5] and that he did not violate Department regulations by failing to speedily remit premium payments to the Plan.

---

[4] The Commissioner's Adjudication also ordered Petitioner to cease and desist from charging a fee for placing insurance with the Plan, accepting premium payments in a form not authorized by the Plan and failing to remit payment to the Plan in a speedy manner.

[5] Petitioner cites former 31 U.S.C. §463 as the section which provides that Federal reserve notes are legal tender for all debts. Many of the provisions of Title 31 were re-codified in 1982. A current version of former §463 now appears at 31 U.S.C. §5118(d). The current section which Petitioner appears to be actually relying on however, is 31 U.S.C. §5103.

Professional Insurance Agents of Pennsylvania, Maryland and Delaware, Inc. and John T. Abram were granted leave to file a brief and to argue as Amicus Curiae in the instant appeal. The Amicus raises seven issues for this Court's review, but not one of these issues was raised before the agency, although the Commissioner did discuss, sua sponte, the fact that the pertinent Plan rules established under the repealed No-Fault Motor Vehicle Insurance Act and the Motor Vehicle Financial Responsibility Law were the same. Therefore, pursuant to Pa. R.A.P. 1551(a) those issues raised by the Amicus Curiae, with the exception of that which questions whether Petitioner can be said to have violated Section 21(3) of the Assigned Risk Plan are deemed to have been waived.[6] We will not permit the Amicus Curiae to raise issues which the Petitioner himself is barred from raising by failing to argue them below.

Our scope of review of an order of the Insurance Commissioner is limited to a determination of whether constitutional rights have been violated, an error of law has been committed or the findings of fact are supported by substantial evidence. *Komada v. Browne,* 97 Pa. Commonwealth Ct. 19, 508 A.2d 1284 (1986).

The Amicus Curiae contends that Petitioner was cited for violations of the Assigned Risk Plan established by the Motor Vehicle Financial Responsibility Law.

---

[6] Pa. R.A.P. 1551(a)(1) does provide an exception for questions involving the validity of a statute. The Amicus argues that Section 21(3) of the Plan is a substantive rule of conduct which must conform to the Commonwealth Documents Law (Law), Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§1102-1208. Section 207 of the Law, 45 P.S. §1207, requires that regulations be filed with the Legislative Reference Bureau. The Amicus contends that neither the Pennsylvania Insurance Plan nor the Assigned Risk Plan have been so filed. Although the Assigned Risk Plan is not relevant to the instant case, neither it nor the Pennsylvania Automobile Insurance Plan are statutes for purposes of Pa. R.A.P. 1551(a)(1).

Petitioner's violations occurred in January and February of 1984. As the Motor Vehicle Financial Responsibility Law did not go into effect until October 1, 1984, the Amicus Curiae maintains that the Assigned Risk Plan rules do not apply.

The Department's Order to Show Cause dated May 15, 1985, avers that Petitioner violated the rules of the Pennsylvania Automobile Insurance Plan, which were in effect at the time of the alleged violations, rather than the Assigned Risk Plan. Further, Section 21(3) of the Pennsylvania Automobile Insurance Plan prohibiting producers from charging a fee for placing applicants has an effective date of December 1, 1983. The identical section appears in the rules of the Assigned Risk Plan and in his Order and Adjudication the Commissioner notes this fact. Apparently, the Amicus Curiae assumed the Commissioner relied on the rules of the Assigned Risk Plan simply because it is mentioned in the Adjudication. However, it is clear that the Commissioner found that Petitioner had violated Section 21(3) of the rules of the Pennsylvania Automobile Insurance Plan which was in effect at the time the violations occurred.

We next turn to those issues raised by Petitioner. We disagree with Petitioner's contention that there is no evidence that he charged applicants a fee for placing them in the Plan. As the Commissioner noted, Section 21(3) of the Plan, prohibiting a producer from charging a fee for placing an applicant, is "an obvious recognition of the limited and routine efforts required of provider to place insurance with the Plan, and serves to protect the motoring public mandated by law to maintain coverage, from excessive and unwarranted charges by unscrupulous agents and brokers."[7]

---

[7] May 15, 1985, Adjudication and Order of Insurance Commissioner at p. 9.

In the "Discussion" section of his Adjudication, the Commissioner noted that the rules of the Plan only require that Petitioner submit the application with the premium, process claims[8] and maintain records.[9] Petitioner is not required to perform a credit evaluation, purchase a money order, or provide whatever is meant by "telephone inquiry service and computer service". Petitioner claims he must provide all of these services initially, prior to making a determination as to whether or not an applicant can be placed in the voluntary market as opposed to the Plan. However, one applicant testified that Petitioner had informed him prior to when he applied that he would have to be placed in the Pennsylvania Automobile Insurance Plan.[10] The Commissioner discredited Petitioner's testimony that he actually provides all services listed in the fee agreement to each applicant. Questions of credibility are solely within the discretion of the Commissioner as fact finder. *See, Insurance Department v. The Pennsylvania Coal Mining Association*, 26 Pa. Commonwealth Ct. 348, 363 A.2d 823 (1976).

As the Commissioner noted, Petitioner could possibly charge for additional services provided to applicants who were eventually placed in the Plan, but these individuals should be provided with separately itemized bills. By requiring every applicant to pay a twenty dollar fee for services which may not be performed if they are placed in the Plan, Petitioner is in clear violation of the Plan's requirement that a producer's compensation be limited to a commission. Therefore, there is substantial record evidence to support the Commission-

---

[8] Section 26 of the Pennsylvania Automobile Insurance Plan.

[9] Section 12(2) of the Pennsylvania Automobile Insurance Plan.

[10] Notes of Testimony from August 12, 1985, hearing before Insurance Department Hearing Examiner at 29.

er's finding that Petitioner was actually charging a fee to those applicants he placed in the Plan.

Petitioner argues further that Section 621 of the Insurance Department Act, 40 P.S. §251, permits an insurance broker to charge a fee for assisting an applicant to obtain insurance. He therefore maintains that Section 21(3) of the Pennsylvania Automobile Insurance Plan is illegal as it is an attempt on the part of the Commissioner to supersede Section 621.[11] We disagree. Section 621 simply defines a broker as one who "for compensation" aids another in obtaining insurance. This does not provide a broker with a right to be compensated by way of commission plus an additional fee.

Petitioner also contends that the Commissioner erred by concluding that he violated Section 11(c) of the Plan and 31 Pa. Code §33.29(d) which contain identical language as to the permitted form of payment of premiums to the Plan. Both specify that premiums are to be paid to the "producer of record" by way of a "money order, cashier's check, certified check, or personal check made payable to the 'Pennsylvania Automobile Insurance Plan'."

On at least four occasions in 1984, Petitioner accepted cash from applicants and purchased money orders on

---

[11] Petitioner also contends that Section 21(3) of The Pennsylvania Automobile Insurance Plan is a violation of Art. I, Section 10 of The United States Constitution prohibiting the impairment of contracts. We find no merit in such an assertion. Section 21(3) of the Plan has an effective date of December 1, 1983, and Petitioner's four violations occurred in 1984. As stated by our Supreme Court in *Schenley Farms Co. v. Allegheny County,* 349 Pa. 637, 644, 37 A.2d 554, 558 (1944), "A statute in force at the time of the making of a contract could not possibly be said 'to impair the obligation' of the contract. That the consitutional inhibitions to which plaintiff refers operates [sic] only upon statutes enacted subsequently to the contractual obligation which could be impaired by such statutes is too clear to require argument."

their behalf. Petitioner maintains that he was not the "producer of record" until such time as the application was completed. Petitioner would have us hold that the application is not complete until the premium is attached, and therefore he is not the producer of record until after he has accepted the cash and purchased the money order. We refuse to interpret either provision in such overly technical manner. Both provisions clearly require that payments be made to Petitioner in certain specified forms which do not include cash. As the Commissioner noted, the purpose of both Section 11(c) of the Plan and 31 Pa. Code §33.29(d) is to protect against the diversion or commingling of the premiums and to avoid any incentive for a producer to delay remittance. By accepting cash for premiums, Petitioner has violated both provisions.

Petitioner next contends that he was entitled to accept cash for premiums for coverage under the Plan pursuant to the third paragraph of Section 11(c) of the Plan itself as well as 31 U.S.C. §5103. The third paragraph of Section 11(c) of the Plan provides as follows:

The Plan reserves the right to require that such deposits [of premium monies] and any and all future payments to companies be made by the producer's certified check, bank check or money order or by the applicant's check when during a period of one year a producer has on three or more occasions submitted his checks to the Plan or to companies, which have been dishonored by the bank for insufficient funds.

Petitioner maintains that this language implies that the producer may send his own money order to the Plan which he would only do if he received a premium payment from the applicant in some other form. However, the third paragraph of Section 11(c) does not permit a producer to collect premium payments in any other

form than those set forth in the second paragraph or in 31 Pa. Code §33.29(d). We therefore disagree with Petitioner's argument that the third paragraph of Section 11(c) implicitly authorizes a producer to accept cash from an applicant for insurance premiums under the Plan. Further, there is no such section in the regulations, which in 31 Pa. Code §33.29(d) clearly prohibit a producer from accepting cash from such an applicant. Here Petitioner not only accepts cash from applicants in violation of Section 11(c) and 31 Pa. Code §33.29(d), but also charges the applicant a fee for purchasing a money order in further violation of the rules of the Plan.

Petitioner also argues that Section 33.29(d) and Section 11(c) of the Pennsylvania Automobile Insurance Plan prohibiting payment of premiums in cash violate Article I, Section 10, Paragraph I of the United States Constitution which denies the states the right to make "legal tender" anything but gold and silver coin. However, requiring a producer to only accept premium deposits for insurance coverage under the Pennsylvania Automobile Insurance Plan in the form of postal money orders, cashier's checks, certified checks and personal checks is not the equivalent of a state making "legal tender".

Petitioner points out that 31 U.S.C. §5103 makes United States coins and currency including Federal reserve notes, legal tender for all debts. Petitioner argues that by prohibiting a producer from accepting cash, Section 11(c) of the Plan and 31 Pa. Code §33.29(d) are in violation of the federal statute.

"Legal tender" is defined as "that kind of coin, money or circulating medium which the law compels a creditor to accept in payment of his debt when tendered by the debtor in the right amount." Black's Law Dictionary 1637 (5th ed. 1979). In the instant case the Plan and not the Petitioner is the creditor and the applicant is the

debtor. The producer is only acting as an agent for the purpose of transferring the premium to the Plan. Section 5103 could conceivably require the Plan as creditor, to accept a direct cash payment for premiums from the applicant, however this is not the situation we are faced with. The producer is not the creditor who is compelled to accept cash.

There are important public policy reasons behind Section 11(c) of the Plan and 33 Pa. Code §33.29(d). First of all they are designed to prevent a producer from retaining a cash premium deposit or failing to remit such deposit immediately, thus needlessly delaying coverage. The exclusion of cash as an accepted form of payment protects the public against those producers who might charge an amount greater than the actual premium and retain the difference. Section 11(c) of the Plan and 31 Pa. Code §33.29(d) ensure protection of (1) the applicant from unscrupulous producers and (2) the general public by encouraging prompt remittance and reducing the number of uninsured motorists. We do not believe that either provision violates federal law.[12]

Lastly, Petitioner contends that the Commissioner erred by concluding that he failed to speedily remit premium payments to the Plan as required by 31 Pa. Code §33.29(d). The Commissioner found that on three

---

[12] *See, Locke v. O'Hara*, 45 Pa. D. & C. 459 (1942), holding that former Section 913(b) of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333 *as amended*, formerly 25 P.S. §2873(b), repealed by Section 3 of the Act of December 12, 1984, P.L. 968, providing that fees for filing nomination petitions must be paid by "certified check or money order only", did not violate the United States Constitution or the Acts of Congress relating to legal tender. Former Section 2873(b) was subsequently amended to allow payment of filing fees by cash in addition to a certified check or money order and was repealed by Section 3 of the Act of December 12, 1984, (Act) P.L. 968. A similar provision was added by Section 4 of the Act, 25 P.S. §2873(b.1).

occasions in early 1984, there was a three to five day delay between the date of application and remittance of the premium payment and application to the Plan. The Commissioner noted that "an unexplained and unexcused five-day delay does not constitute speedy remittance". Petitioner maintains such a conclusion is erroneous because there is nothing in the record to indicate that the delay was not excused. Obviously Petitioner is the one who should justify his delay in remitting premiums to the Plan and neither the Commissioner nor this Court is required to infer justification on his behalf.

In light of the foregoing reasoning we will affirm the order of the Commissioner.

## ORDER

AND NOW, this 22nd day of October, 1987, the order of the Insurance Commissioner in the above-captioned matter is affirmed.