617 A.2d 863

**Albert D. PARK and the Park Insurance
Agency, Inc., Petitioners,**

v.

**Ronald E. CHRONISTER, in his capacity as Acting
Insurance Commissioner of the Commonwealth
of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 18, 1992.

Decided Nov. 23, 1992.

Reargument Denied Jan. 13, 1993.

564

Patricia Carey Zucker and William R. Balaban, for petitioners.

Arthur F. McNulty, Dept. Counsel, for respondent.

Lewis R. Olshin, for intervenor, Pennsylvania Assigned Risk Plan.

Before COLINS and KELLEY, JJ., and NARICK, Senior Judge.

COLINS, Judge.

Albert D. Park and The Park Insurance Agency, Inc. (collectively referred to as Park) appeal an order of the Insurance Commissioner (Commissioner) who determined that Park had

violated numerous statutes involving the writing of automobile insurance policies under the Assigned Risk Plan (Plan).[1]

On October 27, 1989, the Pennsylvania Insurance Department (Department) approved an amendment to the Plan Rules creating a "Producer Certification Program."[2] As of August 6, 1990, only certified producers could submit applications to the Plan. Park applied for producer certification, but, on July 27, 1990, the Governing Committee of the Plan denied Park's application. The Plan took that action, because it had received numerous complaints against Park claiming that he had refused to timely submit applications to the Plan, and he had failed to return unearned commission dollars to insurers participating in the Plan.[3] Park appealed the denial to the Commissioner.

1. The Plan was established in 1984 by Sections 1741–1744 of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1741–1744. The Plan is an unincorporated association of automobile insurance carriers which provide insurance for high risk drivers unable to purchase coverage on the open market. Prior to the creation of the Plan, automobile insurance for high risk drivers was provided through the Pennsylvania Automobile Insurance Plan (PAIP), which was authorized by Section 105 of the No–Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, formerly 40 P.S. § 1009.105(a), repealed by the Act of February 12, 1984, P.L. 26.

2. Section 26 of the Plan Rules was amended, effective August 6, 1990, to establish the Producer Certification Program. That section reads in pertinent part as follows:

 The Governing Committee, in accordance with standards and procedures approved by the Insurance Commissioner, shall certify qualifying agents and brokers licensed to transact automobile insurance business in Pennsylvania to submit applications on behalf of applicants to the Pennsylvania Assigned Risk Plan.
 All agents and brokers holding such a valid license must, prior to submitting applications to the Plan, certify, in writing, that they hold a valid Pennsylvania agent's or broker's license and that they will abide by the Performance Standards for Produces and the rules and procedures of the Plan. . . .

3. Park received a "Step III letter" from the Plan. A Step III letter advises an insurance agent that, for the third time, the Plan has received an unacceptably high number of complaints against the agent. Under Section 12 of the Rules of Operation of the Producer Certification Program, producer certification cannot be granted to an insurance agent who has received a Step III letter. Park was the only agent or broker who applied for producer certification who had an outstanding Step III letter.

Because of the large number of complaints against Park, the Department initiated an investigation of Park's business practices. On September 24, 1990, as a result of the investigation, the Department entered an order to show cause against Park, charging him with violating several insurance laws. Thereafter, the Commissioner consolidated Park's appeal of the decision of the Plan's Governing Committee and the Department's order to show cause. The Plan intervened in this proceeding.

After a hearing, the Commissioner found as fact that Park required individuals seeking insurance under the Plan to sign a "Retainer Agreement" and pay a $100.00 fee before submitting an application to the Plan; no additional services were provided to the applicant. Park required applicants for insurance other than the Plan to sign an "Authorization, Acknowledgment, and Agreement" and, again, charged each applicant a fee. In addition, Park charged applicants fees as high as $200.00 to obtain a copy of their respective driving records. The Commission also found that, in many instances, Park improperly delayed the processing of insurance applications, possibly exposing applicants to criminal and civil penalties. Further, Park accepted cash for payment of Plan premiums and did not always complete a surplus lines affidavit certifying that the applicant was uninsurable.

The Commissioner concluded that Park had committed the following violations of state insurance laws: (1) Sections 4 and 5 of the Unfair Insurance Practices Act (UIPA), Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. §§ 1171.4 and 1171.5; (2) the Act of January 24, 1966, P.L. (1965) 1509, *as amended,* 40 P.S. §§ 1006.1–1006.19, commonly known as the Surplus Lines Law (SLL); (3) Sections 603, 622 and 633.1 of the Insurance Department Act of one thousand nine hundred and twenty-one (IDA), Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. §§ 233, 252, and 273.1; [4] and (4) 31 Pa.Code § 33.29. Park was sanctioned by having his insurance licenses revoked and/or suspended, and he was fined a total of $63,000. The Commissioner also ordered Park to pay restitution to consum-

4. Section 633.1 was added by Section 1 of the Act of July 10, 1959, P.L. 524.

ers who were charged illegal fees. This appeal followed. This Court granted a stay of the Commissioner's sanction pending the resolution of this appeal and, further, this Court granted the Department's motion for expedited consideration of the issues raised on appeal.

Park contends that (1) the administrative proceedings before the Commissioner violated his right to a fair trial in a fair tribunal as guaranteed by the Fourteenth Amendment to the United States Constitution, (2) the Commissioner erred in applying the regulations found at 31 Pa.Code § 33.29, (3) the Commissioner erred in determining that charging a service fee is a violation the UIPA, (4) the Commissioner lacks the authority to punish violations of the UIPA not determined to a be an unfair or deceptive practice, by anything more than a cease and desist order, (5) the Commissioner erred in concluding that he committed unfair insurance practices in violation of the UIPA, (6) the Commissioner erred in applying the SLL because the Plan is not a surplus lines insurer, (7) there is no statutory basis supporting the "Producer Certification Program," (8) the Commissioner's enforcement of rules of conduct which pertain to agents conducting business under the Plan but do not pertain to agents who conduct business in the voluntary insurance market offends the equal protection clause of the Fourteenth Amendment to the United States Constitution, and (9) the Commissioner erred in determining that he was unworthy of licensure under Section 603 of the IDA, 40 P.S. § 233.

■ Our scope of review of an order of the Commissioner is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or the necessary findings of fact are supported by substantial evidence. *Seidman v. Insurance Commissioner of the Commonwealth of Pennsylvania,* 110 Pa.Commonwealth Ct. 401, 532 A.2d 917 (1987).

■ First, Park contends that the proceedings before the Commissioner lacked any semblance of administrative regularity and, thus, he was deprived of his Fourteenth Amendment

right to a meaningful hearing and a fair trial. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). A meaningful hearing demands that the person have the right to support his allegations by argument, however brief, and by proof, however informal. *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

Park argues that he was deprived of due process, because the prosecutorial and adjudicative functions of the Department were commingled during his hearing before Commissioner, and, therefore, the hearing was biased against him. A fair trial in a fair tribunal is a basic requirement of due process, and this principle applies to proceedings before administrative agencies. *Shah v. State Board of Medicine*, 139 Pa.Commonwealth Ct. 94, 589 A.2d 783, *petition for allowance of appeal denied*, 528 Pa. 646, 600 A.2d 197 (1991). Administrative proceedings must be unbiased and avoid even the appearance of bias to be in accord with the principles of due process. *Id.* Park alleges that the Department's Chief Counsel contacted a witness whose testimony he sought to introduce; the Chief Counsel supposedly told the witness that his testimony was irrelevant. Thereafter, the hearing examiner denied Park's request to subpoena the witness on the ground that the witness's testimony was irrelevant and immaterial. Park asserts that these facts indicate that the Chief Counsel knew in advance the outcome of an important adjudicative ruling, and, thus, the proceedings below appear to have been biased. Our review of the record, however, reveals nothing even suggesting collusion between the hearing examiner and the Department's Chief Counsel or any commingling of their respective roles. Merely because the hearing examiner reached the same legal conclusion as that proposed by the Department does not, in our view, imply that any improper conduct occurred. Therefore, we conclude that Park's hearing

was not prejudiced by bias or commingling of the prosecutorial and adjudicative roles of the Commissioner.[5]

 Further, Park argues that his due process rights were violated by the hearing examiner's decision to grant a request of the Department to subpoena documents. The hearing examiner had previously denied the Department's subpoena, but, at a later date, reversed his decision and granted the subpoena. He argues that the hearing examiner's unexplained decision to reverse himself and issue the subpoena demonstrates "the ludicrousness of the proceedings." The hearing examiner's decision to change his ruling on issuing the subpoena, however, does not, in itself, suggest that the proceedings below offended due process or were in any way ludicrous. Therefore, we conclude that the hearing examiner's actions did not violate due process.

 Park also argues that the hearing examiner precluded him from introducing the testimony of a witness in violation of his due process rights. We disagree. Proceedings before the Commissioner are governed by the General Rules of Administrative Practice and Procedure (Rules), 1 Pa.Code §§ 31.1–35.251. *Celane v. Insurance Commissioner*, 51 Pa.Commonwealth Ct. 633, 415 A.2d 130 (1980). Under the Rules, a hearing examiner is expressly granted the authority to limit the number of witnesses who may testify and to control the reception of evidence so as to confine it to the issues in the proceeding. 1 Pa.Code §§ 35.127 and 35.162. Park desired to present the testimony of a witness who would establish that the insurance market in Philadelphia is effectively closed to new automobile insurance customers; the testimony, Park asserts, would have demonstrated that he did not need to comply with the SLL requirement that he obtain rejections from insurers in the voluntary market. The hear-

---

**5.** Park also claims that his hearing was biased, because the hearing examiner refused to admit into evidence Plan letters and memoranda after the Department aggressively opposed their discovery. We disagree. The hearing examiner's decision not to admit evidence challenged by the Department during the discovery process does not raise any inference of misconduct. Therefore, Park's argument is without merit.

ing examiner, however, correctly determined that the testimony was irrelevant and immaterial, because the existence of unusual market conditions in the Philadelphia area cannot excuse Park's failure to comply with the SLL. Therefore, since the testimony in question was properly excluded as irrelevant, Park's due process rights were not violated.

■ Next, Park contends that the Commissioner's adjudication cannot rely upon 31 Pa.Code § 33.29(d) because that regulation does not apply to the Plan. 31 Pa.Code § 33.29(d), in pertinent part, is as follows:

> [P]remium monies to the producer of record shall be in the form of a postal money order, cashier's check, certified check or personal check made payable to the 'Pennsylvania Automobile Insurance Plan.' The producer of record shall speedily remit such payment in conformance with the rules of the Plan.

This regulation prohibits an agent or broker from collecting Plan premiums in the form of cash. *Seidman.* This contention is not raised in Park's "Statement of Questions Involved" and, thus, cannot be considered. Pa.R.A.P. 2116(a); *Appeal of Gemstar/Ski Brothers,* 133 Pa.Commonwealth Ct. 115, 574 A.2d 1201 (1990).[6]

---

**6.** Even if this question was properly before us, Park's contention would fail. Park argues that 31 Pa.Code § 33.29 does not apply to the Plan because the Plan was not "adopted" by the Department as required by Section 1741 of the MVFRL, which states in pertinent part that "[t]he Insurance Department ... shall adopt a reasonable Assigned Risk Plan...." As evidence that Plan was never adopted, Park points to Section 2 of the Plan Rules which states that the Commission "has approved this Plan." We do not see any significant distinction between the words "adopt," which was not defined by the MVFRL, and the word "approve." Therefore, the Plan was adopted by Department.

In addition, Park incorrectly argues that 31 Pa.Code § 33.29 is inapplicable to the Plan, because the language of the regulation specifically refers to the PAIP and was not updated to reflect the creation of the Plan. Section 1937 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1937, provides that a reference in a statute to a statute or regulation includes any new statute or regulation substituted for that statute or regulation. Following this reasoning, since the Plan was created to substitute for the PAIP, 31 Pa.Code § 33.29 clearly applies to the Plan regardless of whether the language of the regulation was modified to refer to the Plan.

Further, Park contends that the Commissioner erred in determining that charging a service fee violates Section 4 of the UIPA, 40 P.S. § 1171.4. Section 4 of the UIPA reads as follows:

No person shall engage in this State in any trade practice which is defined or *determined* to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance pursuant to this act.

(Emphasis added.)

Section 7 of the UIPA, 40 P.S. § 1171.7, grants the Commissioner the power to determine whether an insurance agent or broker has been engaged in a unfair or deceptive act prohibited by the UIPA. The Commissioner determined that charging a service fee to applicants for routine services incidental to filing an application to the Plan for which application the agent is compensated by commissions, is an unfair practice in the business of insurance as proscribed by Section 4 of the UIPA. We agree with the Commissioner. When a statute is not explicit, the intent of the legislature may be ascertained through administrative interpretation, and, further, the construction of a statute by an administrative agency should not be disregarded unless it is clearly erroneous. *Carol Lines, Inc. v. Pennsylvania Public Utility Commission*, 83 Pa.Commonwealth Ct. 393, 477 A.2d 601 (1984). While the charging of service fees is not explicitly prohibited by the UIPA, the Commissioner properly exercised his power under the UIPA to determine that Park's use of service fees was an unfair insurance practice. The Commissioner's construction of the UIPA is not, in our view, clearly erroneous. Therefore, we hold that the Commissioner correctly concluded that Park's

Park argues, in the event that 31 Pa.Code § 33.29 applies to the Plan, that the Commissioner erred in holding that his acceptance of cash premiums violated Section 633.1 of the IDA, 40 P.S. § 273.1. Section 633.1 prohibits an insurance agent or broker from commingling funds collected for his or her principal. In *Seidman,* this Court held that the purpose of 31 Pa.Code § 33.29(d) is to protect against commingling of premiums, and, thus, we affirmed an order of the Commissioner which held that the acceptance of cash in violation of 31 Pa.Code § 33.29(d) is also a violation of Section 633.1 of the IDA. Therefore, this argument is without merit.

use of service fees violated Section 4 of the UIPA, 40 P.S. § 1171.4.

Moreover, Park's decision to charge service fees violated the terms of the agency relationship he had with the Plan. A principal has the right to control the conduct of an agent with respect to matters entrusted to the agent. Restatement (Second) of Agency § 14 (1957). An agent is subject to obey all reasonable directions of his or her principal and may not act contrary to the directions of the principal. *Id.* at § 385. The Plan, the principal, gave specific directions to Park, as its agent, not to charge service fees to Plan applicants. Section 21 of the Plan Rules limits agents and brokers to remuneration in the form of commissions and prohibits agents and brokers from charging applicants additional fees. Park deliberately disregarded these directions when he charged individuals service fees in order to apply to the Plan. Therefore, we conclude that Park's disregard of the Plan Rules was *per se* an unfair insurance practice.

Next, Park contends that the Commissioner is not empowered to sanction violations of the UIPA, other than violations specifically defined in Section 5 of the UIPA, 40 P.S. § 1171.5, as unfair or deceptive acts, by anything more than a cease and desist order. The Commissioner concluded as a matter of law that charging a service fee to perform routine services is a violation of Section 4 of the UIPA, 40 P.S. § 1171.4, and sanctioned Park by revoking his license for five years. Park argues that because the charging of service fees is not defined as an unfair insurance practice by Section 5 of the UIPA, the Commissioner erred in revoking his license for the violation of Section 4 of the UIPA. We agree.

The Commissioner imposed on Park three concurrent five year revocations of his license for violations of the UIPA. Park challenges only one of these revocations, found at paragraph 7 of the Commissioner's order, which revoked Park's license *solely* for the violation of Section 4 of the UIPA. Section 9 of the UIPA, 40 P.S. § 1171.9, sets forth the administrative remedies available to the Commissioner:

Upon a determination by hearing that this act has been violated, the commissioner may issue an order requiring the person to cease and desist from engaging in such violation or, *if such violation is a method of competition, act or practice defined in section 5 of this act, the commissioner may suspend or revoke the person's license.* (Emphasis added.)

The language of Section 9 of the UIPA clearly limits the Commissioner's power to revoke a license to those violations of the UIPA which are defined in Section 5 of that act. The Commissioner's decision, in paragraph 7 of the order, to revoke Park's license solely for his violation of Section 4 of the UIPA, is, thus, contrary to the express language of Section 9 of the UIPA. We must hold, therefore, that the Commissioner erred in revoking Park's license solely for violation of Section 4 of the UIPA, 40 P.S. § 1171.4. However, this holding does not invalidate the two other concurrent five year revocations.

Park also contends that the Commissioner erred in determining that he violated the UIPA, because (1) Section 5(a)(7)(ii) of the UIPA, 40 P.S. § 1171.5(a)(7)(ii), which prohibits discriminatory fees, applies only to insurance companies and does not apply to insurance brokers and agents, (2) he did not charge discriminatory fees to individuals in the same class, and (3) the written agreements he utilized did not result in misleading or deceptive acts. This contention is not listed in the "Statement of Questions Involved" of Park's brief and, thus, cannot be considered. *Appeal of Gemstar/Ski Brothers.*[7]

7. However, even if we could reach this contention, it would not succeed. Park incorrectly argues that Section 5(a)(7)(ii) does not apply to insurance agent and brokers. Section 4 of the UIPA prohibits any *person* from engaging acts defined in Section 5 as unfair insurance practices. Since the term "person" is explicitly defined in Section 3 of the UIPA as including agents and brokers, this argument is plainly without merit.

Further, with regard to Park's argument that he did not charge Plan applicants discriminatory fees, the Commissioner found as fact that he charged such fees. The Commissioner's findings are supported by substantial evidence and are conclusive on appeal; therefore, this argument is also without merit.

 Further, Park contends that the Commissioner erred in determining that he violated Section 4(b) of the SLL, 40 P.S. § 1006.4(b), by failing to certify that three licensed insurers had declined to insure certain individuals before he procured insurance from an unlicensed surplus lines carrier. Section 4(b) of the SLL, 40 P.S. § 1006.4(b), reads as follows:

The minimum requirements for the diligent effort to procure insurance from licensed insurers which must be made by the producing broker ... is that at least three licensed insurers ... have declined to insure the particular risk.... A declination by the producing broker in his capacity as an agent of an insurer ... shall not be deemed a declination for the purpose of this section.

This Section is augmented by Section 6(a)(1) of the SLL, 40 P.S. § 1006.6(a)(1), which mandates, in pertinent part, that

[b]oth the producing broker and surplus lines agent must execute written declarations in a form prescribed by the commissioner, the producing broker as to his having made a diligent effort to procure the desired coverage from licensed insurers, and the surplus lines agent as to his lack of knowledge as how the coverage can be procured from licensed insurers.

The record shows that Park filed applications with unlicensed insurers through a surplus lines agent, in order to acquire supplemental coverage for applicants to the Plan. The Department introduced into the record six surplus lines declarations listing Park as the producing broker; one of the six

Last, he challenges the Commissioner's determination that he violated Section 5(a)(2) of the UIPA by requiring applicants to sign false, deceptive, and misleading documents as a prerequisite to applying to the Plan. He does not question the Commissioner's conclusion that the documents were false, misleading, and deceptive; he, instead, argues that none of the applicants were in fact mislead or deceived. Section 5(a)(2), 40 P.S. § 1171.5(a)(2), states that an unfair insurance practice results by:

Making, issuing, publishing or circulating in any manner an advertisement, announcement or statement containing any representation or statement with respect to the business of insurance ... which is untrue, deceptive or misleading.

Section 5(a)(2) proscribes the use of false, misleading, and deceptive documents without regard to whether a person was in fact mislead or deceived; therefore, this argument must fail.

declarations had no declining insurance companies listed at all, and the remaining five list Park as declining insurer, an action specifically proscribed by Section 4 of the SLL. Therefore, we hold the the Commission correctly determined that Park violated the SLL.[8]

Park contends that the Producer Certification Plan has no statutory basis and that the Commissioner's enforcement of the Plan Rules offended the equal protection clause of the Fourteenth Amendment of the United States Constitution. While both of these issues were raised in Park's brief, Park's argument on the producer certification issue consisted of one sentence in a footnote; Park included only a few lines in another footnote arguing the equal protection issue. Hence, both of these contentions were too poorly developed in Park's brief for our review. Park, however, fully developed these issues in his reply brief.

An appellant has a general right to file a reply brief "to matters raised by appellee's brief not previously raised in appellant's brief...." Pa.R.A.P. 2113(a). A reply brief may not be used as an opportunity to raise additional issues on appeal. G. Ronald Darlington, *et al.*, Pennsylvania Appellate Practice § 2113:2. Rather than responding to issues raised by the Department, Park's reply brief attempts, *inter alia*, to argue issues he raised but inadequately developed in his brief. It is not the purpose of a reply brief to remedy a discussion of issues presented in an appellant's brief that is so poorly developed as to preclude meaningful appellate review. *See Leonard S. Fiore, Inc. v. Department of Labor and Industry, Prevailing Wage Appeals Board*, 526 Pa. 282, 585 A.2d 994 (1991) (Supreme Court granted appellee's motion to suppress portions of appellant's reply brief which reargued

8. Park argues that the SLL does not apply to insurance provided through the Plan, and, thus, he was not required to execute a surplus lines declaration. The record demonstrates that the defective surplus lines declarations at issue were not made to the Plan but instead related to unlicensed insurers providing additional coverage to individuals insured through the Plan. Hence, Park's argument is without merit.

578

issues previously raised and argued in appellant's brief). We, therefore, decline to consider the aforementioned issues.[9]

Last, Park contends that Commissioner incorrectly held that he was unworthy to hold an insurance license under Section 603 of the IDA, 40 P.S. § 233; that section provides, in pertinent part:

> When the Insurance Commissioner is satisfied that the applicant is worthy of license, and that he is reasonably familiar with provisions of the insurance law of this Commonwealth, he shall issue a license....

The Department's regulations, found at 31 Pa.Code § 33.7, describe the factors which may disqualify an individual from holding an insurance license. Those factors include, *inter alia*, the licensee's violation of any insurance law, for which the Commissioner may suspend or revoke an insurance license that is then in force and evidence that a licensee does not possess the professional competence and general fitness required for doing the business of insurance. 31 Pa.Code §§ 33.7(6) and 33.7(7).

The Commissioner is empowered to exercise his or her discretion in determining whether an individual is worthy of an insurance license. *Slanina v. Sheppard*, 27 Pa.Commonwealth Ct. 376, 366 A.2d 963 (1976). Park failed, again, to raise this issue in his "Statement of Questions Involved." Nevertheless, the record plainly demonstrates that Park violated numerous insurance laws for which his license was properly revoked, and, further, the record is replete with evidence that Park lacks the general fitness necessary for the business of insurance. We, therefore, conclude that the Commissioner did not abuse his discretion in determining that Park was unworthy of holding an insurance license.

Accordingly, we reverse the Commissioner's revocation of Park's license for violation of Section 4 of the UIPA, 40 P.S.

9. Park's reply brief is thirty-nine pages in length. This exceeds the maximum length for rely briefs of 15 pages of conventional typographic printing or 25 pages of reproduction by any other process. Pa.R.A.P. 2135.

§ 1171.4, found at paragraph 7 of the Commissioner's order. The order is affirmed in all other respects.

## ORDER

AND NOW, this 23rd day of November, 1992, the order in the above-captioned case is hereby reversed insofar as it revoked the licenses of Albert Park and The Park Insurance Agency, Inc., for violation of Section 4 of the Unfair Insurance Practices Act. The order is affirmed in all other respects.