# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Moya Rodriguez, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1969 C.D. 2015 |
| | : | Submitted: April 15, 2016 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                     **FILED:  June 22, 2016**

Appellant Moya Rodriguez (Licensee), *pro se*, appeals from an order of the Court of Common Pleas of Montgomery County (trial court).  The trial court denied Licensee's statutory appeal of the suspension of Licensee's driving privileges by the Department of Transportation, Bureau of Driver Licensing (DOT).  DOT issued a notice suspending Licensee's operating privileges under Section 1547(b)(1)(i) of the Vehicle Code (Code)[1] based upon her refusal to submit to chemical testing.  We affirm the trial court's order.

---

[1] 75 Pa. C.S. § 1547(b)(1)(i).  Section 1547(b)(1)(i) of the Code provides that if any person who is arrested for driving under the influence of alcohol "is requested to submit to chemical testing and refuses to do so . . . the department shall suspend the operating privilege of the person . . . for a period of 12 months."  This provision is commonly known as the Implied Consent Law.

On October 8, 2014, Montgomery Township Police Officer Thomas Ward arrested Licensee and charged her with driving under the influence of alcohol. On October 21, 2014, DOT sent a notice of suspension to Licensee, informing her that her driving privileges were suspended for a one (1)-year period as a result of her refusal to submit to chemical testing following her arrest. Licensee filed a statutory appeal of the suspension notice, and the trial court conducted a hearing on September 28, 2015.

During the hearing, DOT introduced the testimony of Officer Ward. Officer Ward testified that on October 8, 2014, at approximately 7:25 p.m., he responded to the report of a vehicle accident at the area of Mallard Drive and Rose Twig Lane in Montgomery Township. (Reproduced Record (R.R.) at 5A.) Officer Ward arrived on scene at approximately 7:30 p.m. and observed a green BMW stopped in the middle of the road in front of 135 Mallard Drive with its four-way flashers activated. (*Id.* at 5A, 29A.) The resident of 136 Mallard Drive, who was standing on his front lawn, informed Officer Ward that Licensee had been driving the BMW when it struck his vehicle parked legally in the street. (*Id.* at 5A.) Officer Ward inspected the two vehicles and discovered that the BMW had suffered disabling, moderate damage to the front passenger side quarter panel and bumper, and that the other vehicle had suffered damage to the rear driver's side quarter panel and bumper. (*Id.* at 5A-6A.)

After inspecting the vehicles, Officer Ward observed Licensee exit her residence and walk in the direction of the vehicle accident. (*Id.* at 6A.) At that time, Officer Ward noticed that Licensee was unsteady on her feet. (*Id.*) Licensee informed Officer Ward that she was the driver and sole occupant of the BMW and that she was changing a song on her iPad at the time of the collision. (*Id.*) As

2

Officer Ward spoke with Licensee, he "could smell a strong odor of an alcoholic beverage on her breath, her eyes were bloodshot, glassy, and droopy[,] . . . her speech was slow and slurred at times[,] . . . [and] her motor movements were lethargic." (*Id.*) Officer Ward asked Licensee for her driver information, and Licensee handed Officer Ward every document contained in the BMW's glove compartment. (*Id.*) When Officer Ward asked Licensee how much alcohol she had consumed, Licensee initially stated that she had had one drink with dinner, however, Licensee later indicated that it had been a few drinks with dinner. (*Id.*) Officer Ward asked Licensee to perform field sobriety tests, and Licensee refused. (*Id.*) Officer Ward then asked Licensee to perform the field sobriety tests away from the vehicle collision and out of view of the neighbors, but Licensee again refused. (*Id.* at 6A-7A.)

As he was completing the accident report, Officer Ward requested that his back-up officer, Police Officer Dave Dunlap, speak to Licensee to see if he could convince her to complete field sobriety tests. (*Id.* at 7A.) Officer Ward explained: "[Licensee] didn't like me, because I asked her if she [had been] drinking. So our, you know, relationship was not great." (*Id.*) At that time, Licensee informed Officer Dunlap that she had consumed a couple drinks with dinner, that her last drink had been at approximately 7 p.m., and that she takes Valium. (*Id.* at 8A-9A.) Licensee also informed Officer Dunlap that, on a scale of one to ten, with one being not impaired and ten being totally impaired, she believed she was a five. (*Id.* at 9A.) Based upon all of the information available to him, Officer Ward believed that Licensee "was under the influence of a controlled substance and alcohol to [a] degree that rendered her incapable of safe driving[,]" and he placed Licensee under arrest for driving under the influence of alcohol.

3

(*Id.*) Licensee was placed in Officer Ward's patrol vehicle and transported to Lansdale Hospital for the purpose of obtaining a chemical test of her blood. (*Id.*)

Officer Ward further testified that upon arrival at the hospital at approximately 8:00 p.m., Licensee refused to get out of the patrol vehicle and began kicking, screaming, and cursing at Officer Ward. (*Id.* at 9A, 30A.) Officer Ward read the DL-26 Chemical Test Warnings to Licensee verbatim and also gave Licensee the opportunity to read the warnings herself. (*Id.* at 9A-11A.) Licensee continued to curse, scream, and kick at Officer Ward. (*Id.* at 9A.) Officer Ward then asked Licensee to submit to a chemical test of her blood. (*Id.* at 11A.) Licensee refused and Officer Ward transported her to the police station. (*Id.* at 10A-11A.) Officer Ward testified on cross-examination that while Licensee did not specifically state "I refuse this test[,]" she did state "I'm not doing this." (*Id.* at 11A-12A.) Officer Ward also testified on cross-examination that he was aware that fellow officers had transported Licensee to Montgomery County Emergency Services for a 302 commitment later that evening, but that he was not aware that Licensee had been subject to a chemical test at that time. (*Id.* at 12A.) Based upon the police report, Officer Ward believed that it was approximately 11:50 p.m., and three hours after he had read Licensee the DL-26 Chemical Test Warnings, that Licensee was involuntarily committed to the hospital. (*Id.* at 32A-33A.)

On direct-examination, Licensee testified that she had a general knowledge of the events of October 8, 2014, but that she did not remember specific details. (*Id.* at 14A.) Licensee admitted that she had consumed alcohol prior to the time of the collision. (*Id.* at 14A-15A.) Licensee also admitted that she remembered kicking and screaming, but she explained that she was "in the throes

of a very severe panic attack[,]" that she "suffer[s] from depression and anxiety[,]" and that "it was a very overwhelming evening." (*Id.* at 14A.) On cross-examination, however, Licensee testified that she did not believe that she had informed Officer Ward or any other officer of her medical and mental conditions. (*Id.* at 25A-26A.) Licensee testified further that at some point later that evening she was taken to Montgomery County Emergency Services to be committed to the hospital for mental health issues, where she was subject to a chemical test. (*Id.* at 15A, 20A, 26A-28A.)

By order dated September 28, 2015, the trial court denied Licensee's appeal and reinstated the suspension of her driving privileges.[2] In so doing, the trial court concluded that DOT had made out its *prima facie* case supporting the license suspension. (Trial Ct. Decision at 5.) The trial court reasoned that although Licensee attempted to argue that her refusal was not knowing and conscious because she allegedly suffered from mental health issues, Licensee presented no medical testimony to establish that her mental health condition precluded her from rendering a knowing and conscious refusal. (*Id.*) The trial court noted that Licensee even admitted that alcohol played a role in her behavior at the time that she refused the chemical testing, and that Licensee did not meet her burden because she did not present a medical expert to rule out alcohol as a contributing factor to her inability to offer a knowing and conscious refusal.[3] (*Id.* at 5-6.) Licensee now appeals to this Court.

---

[2] Following Licensee's appeal to this Court, the trial court issued an opinion pursuant to Pa. R.A.P. 1925(a) in support of its original order.

[3] At the time of the hearing before the trial court, Licensee's attorney also argued that Licensee's submission to a chemical test at the time of her 302 commitment at Montgomery **(Footnote continued on next page…)**

5

On appeal,[4] Licensee contends that the trial court erred in failing to consider the bias, emotions, and apparent prejudice of Officer Ward in assessing his credibility.[5] Licensee does not, however, identify any specific testimony of Officer Ward that she believes to be not credible, but rather, argues generally that

---

**(continued…)**

County Emergency Services constituted adequate compliance with Officer Ward's request to submit to chemical testing. (R.R. 16A-18A, 20A-21A, 24A-25A, 37A-39A.) In response, DOT's counsel argued that Officer Ward gave Licensee a reasonable time to submit to a chemical test, that Licensee's actions constituted a refusal, and that anything that occurred after that time was irrelevant, because Licensee had already refused to submit to the chemical test. (*Id.* at 18A-19A, 21A-24A, 39A-41A.) It appears that the trial court did not find merit to Licensee's argument, as this issue was not addressed by the trial court in its October 29, 2015 opinion.

[4] This Court's review of an order of a trial court denying a licensee's statutory appeal from a license suspension by DOT is limited to considering whether the trial court's factual findings are supported by competent evidence, and whether the trial court erred as a matter of law or demonstrated a manifest abuse of discretion. *McCloskey v. Dep't of Transp., Bureau of Driver Licensing*, 722 A.2d 1159, 1161 (Pa. Cmwlth.), *appeal denied*, 740 A.2d 235 (Pa. 1999).

[5] Our review of the record reveals that the trial court did not direct Licensee to file a statement of errors complained of on appeal. The only issue raised by Licensee in her brief, and countered by DOT in its brief, was whether the trial court accurately assessed the credibility of DOT's witness, Officer Ward. Nevertheless, in her reply brief, Licensee suggests for the first time on appeal that the trial court erred in concluding that: (1) Officer Ward had reasonable grounds to believe that Licensee was operating a motor vehicle while under the influence of alcohol; (2) Licensee refused to submit to a chemical test; and (3) Officer Ward warned Licensee that refusing to submit to testing would result in a license suspension. Rather than responding to the issues raised by DOT in its brief, Licensee's reply brief attempts to raise additional issues for this Court's consideration that were not addressed in Licensee's questions presented or initial brief. "An appellant has a general right to file a reply brief 'to matters raised by appellee's brief not previously raised in appellant's brief.'" *Park v. Chronister*, 617 A.2d 863, 871 (Pa. Cmwlth. 1992) (quoting Pa. R.A.P. 2113(a)). "A reply brief may not be used as an opportunity to raise additional issues on appeal." *Id.* We, therefore, decline to address these issues on appeal and will only address the issue raised by Licensee relating to the credibility of Officer Ward's testimony.

there is no doubt that his testimony is not credible because of his emotional perceptions and bias. It is well-settled that "[d]eterminations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the trial court as fact-finder." *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008). "As fact-finder, the trial court may accept or reject the testimony of any witness in whole or in part." *Id.* "Conflicts in the evidence are for the trial court to resolve and are improper questions for appellate review." *Id.* Credibility determinations will not be disturbed on appeal unless the trial court abuses its discretion. *McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294, 298 (Pa. Cmwlth. 2013).

Here, the trial court concluded that DOT had made out its *prima facie* case for a license suspension by establishing that: (1) Officer Ward had reasonable grounds for placing Licensee under arrest for driving under the influence; (2) Officer Ward apprised Licensee of the consequences of refusing to submit to chemical testing; (3) Officer Ward asked Licensee to submit to chemical testing; and (4) Licensee refused to submit to chemical testing.[6] Although the trial court did not specifically state in its opinion that it found Officer Ward to be credible, the trial court implied as much by recounting Officer Ward's account of events on October 8, 2014, and by concluding that DOT had established a *prima facie* case

---

[6] In order to suspend a licensee's driving privileges for refusing to submit to chemical testing, DOT must establish the existence of the following elements: (1) the police arrested the licensee based upon reasonable grounds to believe that the licensee was operating a motor vehicle while under the influence of alcohol; (2) the police asked the licensee to submit to a chemical test; (3) the licensee refused to submit to testing; and (4) the police warned the licensee that refusing to submit to testing would result in license suspension. *Bomba v. Dep't of Transp., Bureau of Driver Licensing*, 28 A.3d 946, 949 (Pa. Cmwlth. 2011).

7

for the suspension of Licensee's driving privileges.  *See Hasson v. Dep't of Transp., Bureau of Driver Licensing*, 866 A.2d 1181, 1186 (Pa. Cmwlth. 2005) ("[T]he trial court implicitly found Officer Emigh credible by crediting his account of the events").  Finding no abuse of discretion by the trial court, we will not disturb its credibility determinations on appeal.

Accordingly, the trial court's order is affirmed.

 

 

 

 

 

_____
P. KEVIN BROBSON, Judge

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Moya Rodriguez,              :
           Appellant       :
                                :
            v.                 :     No. 1969 C.D. 2015
                                :
Commonwealth of Pennsylvania,     :
Department of Transportation,       :
Bureau of Driver Licensing         :

## **O R D E R**

AND NOW, this 22nd day of June, 2016, the order of the Court of Common Pleas of Montgomery County, dated September 28, 2015, is hereby AFFIRMED.

 

 

_____
P. KEVIN BROBSON, Judge
