J-A03014-23

2023 PA Super 157

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT BRUCE GILLINS | : | |
| | : | |
| Appellant | : | No. 2412 EDA 2021 |

Appeal from the PCRA Order Entered October 27, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0513171-1994

BEFORE: KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:          **FILED AUGUST 18, 2023**

Appellant, Robert Bruce Gillins, appeals from the Order entered in the Court of Common Pleas of Philadelphia County dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9545, in which he challenged the validity of his guilty plea through an ineffective assistance of counsel claim and a claim of breach of contract falling outside the ambit of the PCRA. For reasons that follow, we vacate the order and remand to the trial court, which shall vacate Appellant's sentence, but not his underlying convictions, with the aim of conferring on him the benefit of the bargain he entered when agreeing to plead guilty in exchange for the promise of concurrently run federal and state sentences.

On March 26, 1994, Appellant was arrested and charged with Murder and related state offenses. While his state case was pending, he was

_____

[*] Former Justice specially assigned to the Superior Court.

sentenced in federal court to a life sentence on one count of Continuing Criminal Enterprise and to a concurrent sentence of 240 months' incarceration for money laundering.[1]

On October 3, 1996, Appellant appeared before the trial court and entered a counseled negotiated guilty plea to third-degree murder in exchange for a 10 to 20-year state sentence of incarceration, with no further penalty on the possession of an instrument of crime ("PIC") charge. The trial court's sentencing order indicated that Appellant's sentence would run consecutively with any state sentence Appellant was then serving and, pursuant to the plea negotiation and central to the present issue, *concurrently* with his federal sentences. There is consensus in the record that Appellant indicated he would not have accepted the plea deal without the promise that his existing federal sentences would run concurrently with his state sentence while he was housed in state prison. Appellant filed no direct appeal.

_____

[1] In 1994, a federal grand jury indicted Appellant as the head of a twenty-member organization that conspired to distribute cocaine and commit related offenses in a drug distribution ring that obtained and distributed approximately 20 kilograms of cocaine per week across the Mid-Atlantic from Philadelphia to South Carolina. **See United States v. Kelly**, No. 95-5632, 1997 WL 79942, at *1 (4th Cir. Feb. 26, 1997) (*per curiam*) (summarizing facts relating to co-conspirators). On his Federal Continuing Criminal Enterprise charge, Appellant ultimately pleaded guilty and agreed to cooperate with the government, while on his federal Money Laundering charge, he was sentenced to 240 months' imprisonment to run concurrent with his life sentence.

However, neither defense counsel, the Commonwealth, nor the trial court recognized that relevant federal jurisprudence holds that neither the federal courts nor the federal Bureau of Prisons ("BOP") are bound by a state court sentencing order directing that an existing federal sentence shall run concurrently to the newly imposed state sentence. *See, e.g., Barden v Keohane*, 921 F.2d 476, 478 n.4 (3d Cir. 1990). Therefore, the trial court lacked the authority to order that Appellant's state sentence run concurrently with his federal sentences.

It was not until Appellant applied for a Presidential commutation of his federal sentence in 2012 that he was informed for the first time, by the federal Office of the Pardon Attorney, that his federal sentences were considered held in abeyance until he completed his 10 to 20-year state sentence and reported to a federal correctional facility, only at which time his federal sentences would commence. After consulting with counsel, Appellant filed a petition with the federal BOP asking it to recognize he had been incarcerated nearly 17 years on his state sentence pursuant to his plea agreement in which he was promised that his state sentence would run concurrently with his federal sentences.

The BOP denied his request, citing, *inter alia*, that his federal judgment of sentence was silent on the issue of concurrent sentences. The BOP explained further that it contacted the federal sentencing court on the question of retroactive designation of concurrent sentences in Appellant's case, and the

federal sentencing court replied that it intended Appellant's federal sentence to run consecutively to any other sentence. (See 2/12/19 Rule 907 response, Exhibit E).

As noted in this Court's prior memorandum decision, **Commonwealth v. Gillins**, 245 A.3d 1100 (Pa. Super. 2020) Appellant filed his first PCRA petition on June 6, 2017, alleging ineffective assistance of plea counsel, breach of his plea agreement, and an invalid guilty plea. Specifically, the *pro se* petition claimed that although the Commonwealth and the trial court had agreed that his third-degree murder sentence would run concurrently with his federal sentence, he learned 17 years later that the state court lacked authority to impose concurrent sentences in this case.

The PCRA court appointed counsel, but less than one week later, and without contacting Appellant, appointed counsel filed a petition to withdraw and a **Turner/Finley** [2] letter indicating that Appellant's PCRA claims were time-barred. PCRA counsel conceded that the trial court and both parties had agreed during the guilty plea hearing that Appellant's state sentence would run concurrently with his federal sentence, but counsel concluded Appellant had failed to exercise due diligence by waiting 20 years to turn to the court to seek clarification of his sentence. The PCRA court agreed, granted counsel's

---

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

petition to withdraw, and dismissed Appellant's petition pursuant to Pa.R.Crim.P. 907. *Gillins*, 245 A.3d 1100 at \*\*1.

Appellant filed a *pro se* appeal. In this Court's memorandum decision of December 24, 2020, we determined that PCRA counsel improperly had failed to consult with Appellant in what was Appellant's first PCRA petition, and we recognized that "a collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual enforcement theory of specific performance [such that] the designation of the petition does not preclude a court from deducing the proper nature of a pleading." *Gillins*, 245 A.3d 1100 at \*\*2 (citing *Commonwealth v. Kerns*, 220 A.3d 607, 611-12 (Pa. Super. 2019) (internal citations and quotation marks omitted)). We concluded, therefore, that the PCRA court had "fail[ed] to confront Appellant's allegations of PCRA counsel's ineffectiveness and the possibility that Appellant's claims fall outside of the PCRA[.]" *Gillins*, 245 A.3d 1100, at \*\*5.

Accordingly, we vacated the PCRA court's order and remanded for the appointment of new PCRA counsel, who was to review Appellant's claims of PCRA counsel's ineffectiveness, discern in the alternative whether Appellant's contract-based claim falls outside of the PCRA and its timeliness provisions,

- 5 -

file supplemental briefing on these issues, and continue to represent Appellant for the duration of the PCRA proceedings.[3]

On remand, the PCRA court again issued Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing, and it subsequently denied Appellant's counseled PCRA petition for jurisdictional reasons expressed in newly appointed PCRA counsel's *Turner/Finley* letter. This timely appeal followed.

According to the PCRA court's Pa.R.A.P. 1925(a) opinion, PCRA counsel reviewed and analyzed each of Appellant's issues as directed, and it concluded, in relevant part, that the PCRA court lacked jurisdiction under the PCRA to provide relief because Appellant was no longer serving a state sentence. *See* 42 Pa.C.S.A. § 9543(a)(1)(i) (to be eligible for relief under the PCRA, the petitioner must plead and prove, "the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted currently serving a sentence of imprisonment, probation or parole for the crime."). The PCRA court agreed, as it is undisputed that Appellant's state

_____

[3] We also relinquished jurisdiction. Furthermore, our decision acknowledged that "[t]o the extent Appellant's claims are cognizable under the PCRA, we recognize that Appellant might not even be eligible for PCRA relief if he has finished serving his state sentence, timeliness considerations aside." *Gillins*, 245 A.3d 1100, at *5, n.3. As we note *infra*, the record establishes that Appellant completed his state sentence on March 26, 2019, prior to this Court's decision on December 24, 2020.

sentence for third-degree murder expired on March 26, 2019, at which time he was transferred to federal custody.

Appointed counsel also determined that Appellant had no recourse to challenge his guilty plea under principles of contract law, a position that was also adopted by the PCRA court. According to the PCRA court, because Appellant's only agreement regarding his sentence was with the Commonwealth, which "did not have the authority to force the BOP or federal court to run [Appellant's] federal and state sentences concurrently," the Commonwealth cannot be held in breach of any agreement.[4] Instead, the PCRA court opined, "it was [Appellant's] own lengthy criminal history that prevented the BOP from running the sentences concurrently. Had Appellant been eligible for concurrent sentences under 18 U.S.C.A. § 3621(b), the BOP could have imposed concurrent sentences." PCRA Court Opinion at 11. Accordingly, the PCRA court granted counsel's petition to withdraw pursuant to *Turner/Finley* and dismissed Appellant's PCRA petition as meritless.

This *pro se* appeal followed. In Appellant's *pro se* brief, he raises the following issues for this Court's review:

---

[4] As discussed *infra*, we disagree with the trial court's legal conclusion in this regard, as the inability of both the Commonwealth and a trial court to perform on a promise forming the basis of a plea agreement with Appellant constituted a breach of the agreement.

- 7 -

I.    Was the PCRA Court's dismissal of Appellant's PCRA Petition err [sic] when the court failed to address Appellant's request for relief under breach of contract law?

II.    Was the PCRA Court's dismissal of Appellant's PCRA Petition err [sic] when the court failed to address Appellant's request for relief under a writ of error *coram nobis*.

III.    Was the PCRA Court's dismissal of the Appellant's PCRA Petition unsupported by the record and based on legal err [sic] because Appellant's second PCRA appointed counsel was ineffective for failing to raise the Pennsylvania Supreme Court['s] and this Court's controlling caselaw, Appellant's due process violations, trial ineffectiveness, breach of contract and writ of error *coram nobis* relevant precedent and controlling case law.

IV.    Was the PCRA Court's dismissal of the Appellant's Petition err [sic] when the PCRA Court failed to address the petition in almost two years -- causing a potential statute of limitations bar.

Appellant's *Pro Se* Brief, at 6.

Initially, we conclude that Appellant is ineligible for relief on the several PCRA claims he raises, as he has completed his state sentence. "Eligibility for relief under the PCRA is dependent upon the petitioner [pleading and proving by a preponderance of the evidence that he is] currently serving a sentence of imprisonment, probation, or parole for a crime." **Commonwealth v. Turner**, 80 A.3d 754, 761–62 (Pa. 2013). **See** 42 Pa.C.S.A. § 9543(a)(1)(i). As our Supreme Court has explained, as soon as his sentence is completed, a PCRA petitioner becomes ineligible for relief. **Commonwealth v. Ahlborn**, 699 A.2d 718, 720 (Pa. 1997).

- 8 -

Furthermore, to the extent Appellant seeks *coram nobis* relief for ineffective assistance of counsel claims cognizable under the PCRA, this claim likewise fails. Of significance here, section 9542 of the PCRA provides:

> This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and *coram nobis*. This subchapter is not intended to limit the availability of remedies in the trial court or on direct appeal from the judgment of sentence, to provide a means for raising issues waived in prior proceedings or to provide relief from collateral consequences of a criminal conviction. Except as specifically provided otherwise, all provisions of this subchapter shall apply to capital and noncapital cases.

42 Pa.C.S.A. § 9542 (emphasis added).

Our Supreme Court has construed the language of section 9542 to:

> demonstrate[ ] quite clearly that the General Assembly intended that claims that could be brought under the PCRA must be brought under that Act. No other statutory or common law remedy "for the same purpose" is intended to be available; instead, such remedies are explicitly "encompassed" within the PCRA.

**Commonwealth v. Hall**, 771 A.2d 1232, 1235 (Pa. 2001) (emphasis in original).

Remaining for our consideration, therefore, is Appellant's first issue, in which he contends that the PCRA court erred when it failed to construe his claim applying contract-based principles as a collateral petition existing independently of the PCRA eligibility and timeliness provisions. Through this

separate claim, Appellant asserted that the Commonwealth breached its plea agreement with him when it promised concurrent sentences that the trial court lacked authority to impose unilaterally.

Our review of a collateral petition to enforce a plea agreement is governed by the following principles:

> We recognize that "a collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual enforcement theory of specific performance. The designation of the petition does not preclude a court from deducing the proper nature of a pleading." [] *Kerns*, 220 A.3d [at] 611-12 [] (internal citations and quotation marks omitted). Plea bargains play a critical role in the criminal justice system of this Commonwealth:
>
>> Accordingly, it is critical that plea agreements are enforced, to avoid any possible perversion of the plea bargaining system. The disposition of criminal charges by agreement between the prosecutor and the accused, ...is an essential component of the administration of justice. Properly administered, it is to be encouraged.
>>
>> In this Commonwealth, the practice of plea bargaining is generally regarded favorably, and is legitimized and governed by court rule.... A "mutuality of advantage" to defendants and prosecutors flows from the ratification of the bargain.
>>
>> Assuming the plea agreement is legally possible to fulfill, when the parties enter the plea agreement and the court accepts and approves the plea, then the parties and the court must abide by the terms of

the agreement. Specific enforcement of valid plea bargains is a matter of fundamental fairness. The terms of plea agreements are not limited to the withdrawal of charges, or the length of a sentence. Parties may agree to—and seek enforcement of—terms that fall outside these areas.

Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards. Furthermore, disputes over any particular term of a plea agreement must be resolved by objective standards. A determination of exactly what promises constitute the plea bargain must be based upon the totality of the surrounding circumstances and involves a case-by-case adjudication.

Any ambiguities in the terms of the plea agreement will be construed against the Government. Nevertheless, the agreement itself controls where its language sets out the terms of the bargain with specificity. ...

*Commonwealth v. Snook*, 230 A.3d 438, 444 (Pa.Super. 2020) (internal citations omitted). *See also Commonwealth v. Koch*, 654 A.2d 1168 (Pa.Super. 1995) (explaining that Commonwealth's legal inability to fulfill promise made in plea bargain resulted in breach of plea agreement such that defendant's guilty plea was not knowing and voluntary).

[*Gillins*]

Moreover, the reality of the criminal justice system is that nearly all criminal cases are disposed of by plea bargains: "[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." *Missouri v. Frye*, ––– U.S. ––––, 132 S.Ct. 1399, 1407, 182 L.Ed.2d 379 (2012) (internal citations omitted). Plea bargaining "is not some adjunct to the criminal justice system; it *is* the criminal justice system." *Id*. Accordingly, it is critical that plea agreements are enforced,

- 11 -

> "to avoid any possible perversion of the plea bargaining system." ***Commonwealth v. Fruehan***, 384 Pa.Super. 156, 557 A.2d 1093, 1094 (1989) (internal citations omitted).

***Commonwealth v. Hainesworth***, 82 A.3d 444, 449 (Pa. Super. 2013)

As discussed *supra*, it was unbeknownst to both parties and the trial court that concurrently run state and federal sentences are not available to a state defendant unless the federal Bureau of Prisons (BOP) agrees to it. ***Commonwealth v. Kelley***, 136 A.3d 1007, 1014 (Pa. Super. 2016) (citing ***Commonwealth v. Jones***, 640 A.2d 1330, 1335 (Pa. Super. 1994)). Appellant asserts, nevertheless, that he may still obtain the bargained-for benefit of receiving credit toward his federal sentence, not through the specific performance of terms to what was a void plea agreement at its inception, but by vacating his 20-year state sentence while keeping intact his underlying state convictions.

Such a vacatur, he argues, would bring him within a federal statute[5] that enables inmates to receive retroactive federal credit for time served in state prison and, thus, would remedy the adverse collateral consequences he continues to experience from the denial of his bargain. Specifically, because the BOP held Appellant's federal sentences in abeyance until he completed his state sentence, his standing as a candidate in the federal sentence commutation and reduction programs has suffered.

_____

[5] 18 U.S.C. 3585(b)(2), discussed *infra*.

J-A03014-23

Appellant raises and develops this issue for the first time in his Reply

Brief,[6] in which he addresses the Commonwealth's argument that any iteration

_____

[6] Initially, we consider whether Appellant's reply brief, which significantly supplements the insufficient argument for specific performance of his plea agreement appearing in his original brief, should be prohibited.

> The opportunity for, and the extent of, a reply brief is limited. . . . [A] reply brief cannot be a vehicle to argue issues raised but inadequately developed in appellant's original brief. 16 Standard Pennsylvania Practice 2d § 89.5; *see Leonard S. Fiore, Inc. v. Department of Labor and Industry, Prevailing Wage Appeals Board*, 526 Pa. 282, 585 A.2d 994 (1991)(motion to suppress portions of appellant's reply brief which reargued issues previously raised and argued in appellant's brief granted); *Park v. Chronister*, 151 Pa.Cmwlth. 562, 617 A.2d 863, 871 (1992), *alloc. denied,* 534 Pa. 654, 627 A.2d 731 (1992). When an appellant uses a reply brief to raise new issues or remedy deficient discussions in an initial brief, the appellate court may suppress the non-complying portions. Pa.R.A.P. 2101. If the defects in a brief are substantial, appellate courts have the discretion to quash or dismiss the appeal. Pa.R.A.P. 2101; *see Grosskopf v. WCAB (Kuhns Market)*, 657 A.2d 124 (Pa.Cmwlth.), *alloc. denied*, 542 Pa. 677, 668 A.2d 1139 (1995); *Commonwealth v. Taylor*, 306 Pa.Super. 1, 451 A.2d 1360 (1982). The onus of complying with the rules of appellate procedure falls entirely on appellate counsel, who may suffer consequences from committing prejudicial errors. *See Commonwealth v. Stoppie*, 337 Pa.Super. 235, 486 A.2d 994 (1984)(admonishing appellate counsels who do not comply with published rules).

*Commonwealth v. Fahy*, 737 A.2d 214, 219 (Pa. 1999).

Because Appellant's reply brief is responsive to the Commonwealth's theory that the completion of his sentence renders moot the issue that he could achieve the benefit of his bargain by modifying or vacating his sentence, we deem it appropriate to review the position taken in the reply brief. *Cf. Fahy* (electing to review issues raised in the appellant's reply brief, despite their absence from the original brief, where the Commonwealth wished to respond with a sur reply brief).

- 13 -

of a contract-based issue is necessarily moot because Appellant has completed his state sentence and may no longer obtain the benefit of the bargain through specific performance of its terms. *See Mistich v. Pa. Bd. Of Probation and Parole*, 863 A.2d 116, 120 (Pa. Cmwlth. 2004) (holding where petitioner chooses to attack only his sentence, and not the underlying conviction, the expiration of the sentence renders the case moot unless the petitioner can demonstrate collateral consequences adequate to satisfy the case-or-controversy requirement). *Accord Commonwealth v. King*, 786 A.2d 993, 996 (Pa. Super. 2001). *See also Pub. Defender's Office of Venango Cty. V. Venango Cty. Ct. of Common Pleas*, 893 A.2d 1275, 1279 (Pa. 2006) (noting that under the mootness doctrine, "an actual case or controversy must be extant at all stages of review, not merely at the time the complaint is filed.").

The Commonwealth concedes that Appellant's guilty plea was invalid and that he was unfairly deprived of the benefit of his bargain, but it insists, nevertheless, that once Appellant's state sentence expired, so, too, did any further consequences flowing from the breach of contract. Yet, the Commonwealth does admit that "[h]ad [Appellant's] Pennsylvania sentence been concurrent with his federal sentence, he would have finished the 240-month federal money laundering sentence that runs concurrent with his life sentence. The fact that he is only now beginning that sentence may affect his efforts at obtaining federal clemency. But . . . no remedy in state law can

force the BOP to credit his state time toward his federal sentence, even if he was denied the benefit of his bargain with the Commonwealth." Brief for Appellee, at 16.

Our jurisprudence has long recognized a defendant's right to either vacate or modify a sentence stemming from the Commonwealth's or trial court's unlawful inducement of a guilty plea or breach of a plea agreement. In the seminal case of **Commonwealth v. Zuber**, 353 A.2d 441 (Pa. 1976), the Pennsylvania Supreme Court held that the Commonwealth's legal inability to fulfill a promise that induced the defendant to plead guilty constituted a breach of contract that warranted reversal and remand for the imposition of a new sentence that would confer to the defendant the benefit of his bargain. In so doing, it explained:

> there is an affirmative duty on the part of the prosecutor to honor any and all promises made in exchange for a defendant's plea. []. Our courts have demanded strict compliance with that duty in order to avoid any possible perversion of the plea bargaining system, evidencing the concern that a defendant might be coerced into a bargain or fraudulently induced to give up the very valued constitutional guarantees attendant the right to trial by jury.

> Therefore, in Pennsylvania, it is well settled that 'where a plea bargain has been entered into and is violated by the Commonwealth, the defendant is entitled, at the least, to the Benefit of the bargain.' **Commonwealth v. Zakrzewski**, 460 Pa. 528, --, 333 A.2d 898, 900 (1975) (emphasis added).

**Zuber**, 353 A.2d at 458-59.

We also have determined that when a prosecutor is unable as a matter of law to fulfill a promise made in a plea bargain, a breach of the plea

agreement occurs that renders the defendant's guilty plea unknowing and involuntary. In this circumstance, the defendant is allowed to choose the relief awarded, that is, whether to withdraw the guilty plea or to effectuate specific performance of the plea agreement. ***See***, ***e.g.***, ***Commonwealth v. Kroh***, 654 A.2d 1168, 1174 (Pa. Super. 1995) (acknowledging defendant had option either to withdraw guilty plea or to obtain performance of the plea agreement, and granting defendant's choice of specific performance); ***Zuber*** (acknowledging option between withdrawal of plea and specific performance where legally unavailable promise of concurrent sentencing induced defendant to plead guilty; court modified sentence pursuant to defendant's request).

The Commonwealth posits, however, that neither remedy is available to Appellant. Specific performance of the plea bargain is not possible for two reasons. The first is that Appellant has completed his state sentence, which the Commonwealth contends would preclude the concurrent running of his state and federal sentences, thus rendering the issue moot. The second is that neither our courts nor the Commonwealth has the authority to impose upon federal prosecutors and the BOP a duty to award Appellant credit toward his federal sentences for time served while he was housed in a state correctional institution serving his state sentence. ***See Konyk v. Pennsylvania State Police of Commonwealth of Pennsylvania***, 183 A.3d 981, 990 (Pa. 2018) (holding it is the prosecutor, not the government of another jurisdiction, who has an affirmative duty to honor promises made in

exchange for a defendant's guilty plea) (*citing* **State v. Barone**, 147 N.J. 599, 689 A.2d 132, 139 (1997) ("Absent consent or participation by state authorities in [a federal] plea agreement, federal prosecutors cannot bind state prosecutors and *vice versa*."). Furthermore, as noted *supra*, the BOP explained in 2019 that retroactive designation of concurrent sentences in Appellant's case would run counter to the federal sentencing court's stated intention that Appellant's federal sentence would run consecutively to any other sentence.

Appellant, however, asserts in his brief that "[w]hat the Commonwealth fails to appreciate is that vacatur of Mr. Gillins's sentence would result in the terms of the plea agreement being necessarily enforced under federal law." Reply Brief for Appellant, at 6. This is so, he maintains, because "Federal law provides that '[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention [] that has not been credited against another sentence." 18 U.S.C. 3585(b)(2).

A review of Section 3585(b)(2) and relevant decisional law substantiates the use of this statute for awarding credit in our circumstances, but it does not support Appellant's unqualified assertion that our vacating his sentence would "necessarily" result in the enforcement of his plea agreement, as the "Attorney General, through the BOP, possesses the sole authority to make credit determinations pursuant to 18 U.S.C. § 3585(b)." **United States v. Whaley**, 148 F.3d 205, 206 (2d Cir.1998).

- 17 -

In ***Dandridge v. Schultz***, No. CIV.A. 07-1531, 2007 WL 4300846 2007 (E.D. PA. Dec. 6, 2007), the defendant sought federal credit for time spent in state prison where the state court vacated both of his state sentences but not his underlying state convictions. Initially, the BOP awarded the defendant federal credit for time served on the state sentences pursuant to Section 3585, because the time ultimately had not been applied to his state sentences. However, when the state eventually reinstated the defendant's state sentences, the BOP revoked the credit.

The defendant filed a federal petition for a writ of habeas corpus alleging that the time served pursuant to his state sentences should be credited toward his federal sentence, entitling him to immediate release. On review, the United States District Court, Eastern District of Pennsylvania, reasoned that the defendant would have had a colorable claim that his time in state prison should be applied to his federal sentence if his vacated state sentences had not later been reimposed:

> The Bureau of Prisons has the authority to compute federal sentences in accordance with 18 U.S.C. § 3585. ***See United States v. Wilson***, 503 U.S. 329, 335, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992) ("[T]he Attorney General must continue to compute the credit under § 3585(b) as he did under the former § 3568."); ***Allen***, 236 F. App'x at 782 ("The authority to calculate a federal prisoner's period of incarceration for the sentence imposed and to provide credit for time served is delegated to the Attorney General, who acts through the BOP."). Section 3585(b) provides:
>
>> Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-

- 18 -

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

Dandridge's federal sentence commenced on March 29, 2007, when he was released by the New Jersey officials and taken into federal custody. *See* 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served."). Prior to this time, he was in "official detention" in New Jersey state prison serving his state sentences.

Dandridge's time in state custody prior to the vacation of his state sentences has "been credited against another sentence," however. The last clause of § 3585 limits "an award of credit for time served prior to the imposition of a federal sentence under section 3585(b) to instances where the time period was not spent in service of a previously imposed sentence and thus had not been credited against that earlier sentence." ***Rios v. Wiley***, 201 F.3d 257, 272 (3d Cir.2000). The provision prohibits "double credit." ***Id***. *If Dandridge's vacated state sentences had not been reimposed, he would have a colorable claim that the time should be applied to his federal sentence.* ***See Kayfez v. Gasele***, 993 F.2d 1288, 1290 (7th Cir.1993) ("[I]t would be unreasonable to consider as a '[credit] against another sentence,' an allowance of credit against a vacated sentence."). But when his state sentence was reimposed, the state court judge gave him credit against his state sentence for the 313 days he had previously spent in state custody. (Camden County Judgment of Conviction, Indictment No. 310-01-06, Apr. 23, 2007.) Applying the same credit to the federal sentence would result in double credit. The BOP did not abuse its discretion in not crediting Dandridge's federal sentence with the time he had served in state prison.

***Dandridge*** at *5 (emphasis added).

As discussed, the Commonwealth persists that Appellant may not

succeed in his attempt to gain the benefit of the bargain made with the

Commonwealth because the sentence has expired and may not now be modified, making his claim moot. It adds, "This conclusion is bolstered by the absence of a remedy. [Appellant] cannot obtain specific performance because no Pennsylvania entity has the authority to order that [Appellant's] state time be credited toward his federal sentence. Only the BOP has that authority and the BOP already denied request for concurrent credit." Brief of Appellee at 16.

Nevertheless, consistent with our precedent stressing principles of fundamental fairness inherent in honoring plea agreements and cautioning that they are to be enforced to avoid any possible corruption of the plea-bargaining system, we find that, on balance, the facts warrant reversal in the present matter. It is agreed that the false promise of concurrent state and federal sentences induced Appellant to plead guilty to the state charges, and that he subsequently served a 20-year state sentence without receiving any time credit toward his federal sentences. There is, furthermore, no dispute that Appellant deals with continuing adverse consequences associated with the denial of his bargain made in the guilty plea. The federal government held his federal sentences in abeyance for twenty years until he completed his state sentence, and Appellant cites authority confirming that federal time served is an important consideration in approving candidates for the federal sentence clemency and reduction programs. *See* Reply Brief for Appellant, at 8, 9.

Finally, although it is settled that the trial court had no authority to order Appellant's federal sentences to run concurrently with Appellant's state sentences, Appellant has presented federal statutory and decisional law, discussed *supra*, showing that federal inmates may receive federal credit towards the service of a term of imprisonment for detention that has not been credited against another sentence. Vacatur of Appellant's 20-year sentence while keeping intact his underlying state convictions, would serve the dual purpose of providing Appellant an opportunity to receive federal credit for his state time and otherwise retaining Appellant's record of conviction. In this way, the Commonwealth's plea agreement with Appellant, as accepted by the trial court, may be effectuated to provide the benefit of the bargain struck between the parties.

For these reasons, we vacate the order below and remand to the trial court, which shall vacate Appellant's sentence but retain his underlying conviction. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2023

- 21 -