J-S43038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
STEPHEN MICHAEL CAPALDI :
:
Appellant : No. 1570 EDA 2024

Appeal from the PCRA Order Entered May 20, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0000116-2023

BEFORE: BOWES, J., STABILE, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED FEBRUARY 06, 2025**

Stephen Michael Capaldi appeals *pro se* from the order denying his first petition pursuant to the Post Conviction Relief Act (PCRA). 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court summarized the pertinent facts as follows:

On October 12, 2022, officers from the Perkasie Borough Police Department responded to a [residence] in Sellersville, Bucks County, Pennsylvania for the report of a missing adult female. Upon arrival, Officer Louis Palmer met with Emma Capaldi, daughter of [Capaldi]. Emma reported that her mother, Elizabeth Capaldi [(the victim)], was missing. Emma told the officers that her father [(Capaldi)] had told her that [the victim] and some of her belongings went missing from the home on October 10, 2022. Emma also relayed that [Capaldi] had told her additional items went missing on October 11, 2022, including $13,000 in cash.

Emma further reported that [Capaldi] had told her that he and [the victim] had gotten into an argument after [the victim] disclosed to [Capaldi] that she had been having an affair for three years. Emma further reported that she had been unable to get in

contact with [the victim] and that [the victim's] phone, iPad, and vehicle were all still at the residence.

Several times throughout the course of the investigation, [Capaldi] spoke with law enforcement. [He] provided law enforcement with information on his whereabouts on October 10, 2022, his last reported sighting of [the victim], and information relating to [the victim's] missing personal items and the $13,000 in cash that was reportedly taken from the residence.

On December 8, 2022, Bucks County Detectives interviewed [Capaldi] at the Bucks Couty District Attorney's Office. During this interview, [Capaldi] was accompanied by his attorney[.] Detectives then offered [Capaldi] a guilty plea proffer, whereupon [Capaldi] would agree to assist law enforcement in locating [the victim's] remains in exchange for pleading guilty to Third Degree Murder (rather than First Degree Murder) and related charges. [Capaldi] agreed to this offer, signing a written agreement with the Commonwealth on the same date.

Following the agreement, [Capaldi] admitted to killing [the victim]. He stated that, on the morning of October 10, 2022, he strangled [the victim] while she was sleeping in her bed, also using a pillow to smother her. Following the murder, [Capaldi] moved [the victim's] body to his basement, where he dismembered her body and disposed of the same on October 12, 2022, prior to ever meeting with law enforcement. [Capaldi] also admitted to purchasing items to carry out the disposal of [the victim's] body. [Capaldi] further admitted that he had lied to law enforcement on multiple occasions during the investigation to include details regarding his whereabouts, his involvement in [the victim's] murder, and the $13,000 in cash and personal items of [the victim] that were reportedly taken from their residence.

PCRA Court Opinion, 7/31/24, at 1-3 (footnotes omitted).

On February 9, 2023, Capaldi was formally charged with third-degree murder, possessing an instrument of crime, tampering with evidence, obstructing administration of law, and abuse of a corpse.

On April 11, 2023, Capaldi entered his guilty plea in accordance with the plea agreement. For its part, the Commonwealth, as required by the

agreement, asked the trial court to impose the negotiated sentence of twenty to forty years imprisonment for Capaldi's murder conviction, with the sentences for the remaining charges to run concurrently. The trial court accepted the majority of the plea, and proceeded to sentencing. The court gave its reasons for rejecting Commonwealth's sentencing recommendation. Instead of running all remaining sentences concurrent to Capaldi's murder conviction, the court chose to impose a one to two-year consecutive sentence on two of the remaining charges, resulting in an aggregate sentence of twenty-two to forty-four years of imprisonment. Although Capaldi filed an untimely *pro se* notice of appeal, upon the advice of subsequently appointed counsel, he later discontinued the appeal in favor of filing a post-conviction petition.

Thereafter, Capaldi filed multiple *pro se* motions and letters to the county clerk of courts in which he expressed his displeasure with attorneys from the public defender's office. On February 2, 2024, Capaldi filed a motion to proceed *pro se*, wherein he wrote that he was currently drafting a PCRA petition and would soon be requesting the appointment of conflicts counsel.

In response, on March 1, 2024, the PCRA court appointed counsel to represent him during his post-conviction proceedings and ordered PCRA counsel to file an amended PCRA petition.

On March 27, 2024, PCRA counsel filed a no-merit letter and a petition to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en*

*banc*), in which counsel stated that she reviewed the record, as well as Capaldi's *pro se* PCRA petition, and found no merit to Capaldi's PCRA claims. On April 1, 2024, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Capaldi's petition without a hearing. In the same order, the court permitted PCRA counsel to withdraw. Capaldi filed a *pro se* response.

By order entered May 20, 2024, the PCRA court denied Capaldi's petition. This appeal followed. Both Capaldi and the PCRA court have complied with Pa.R.A.P. 1925.

Capaldi raises the following four issues, which we have reordered for the ease of disposition:

1. Did [the] Commonwealth breach a plea agreement, evidencing the concern that [Capaldi's] guilty plea was coerced, thus making it unknowingly and involuntarily entered upon, due to false [promises] and lack of veracity?

2. Is a plea bargain a contract and should a collateral petition of breach of plea bargain be treated as breach of contract, outside the gambit of the [PCRA]?

3. Did [the] Commonwealth at guilty plea and sentencing on 4/11/23 engage in misconduct, violating [Capaldi's] United States and Pennsylvania due process rights, breaching the plea agreement, and coercing a confession and guilty plea by a void promise to [him]?

4. Are [Capaldi's] counsel(s) ineffective by reason of abandonment of duty, indifference and absence, by multiple failures and refusals to file timely requested direct appeals and writs, to the prejudice of [Capaldi]? Specifically, did [all prior counsel] create layered ineffectiveness of counsel?

Capaldi's Brief at 1.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

As phrased, Capaldi's first three issues are waived because they all implicate the voluntariness of his guilty plea and could have been raised on direct appeal. 42 Pa.C.S.A. § 9544(b). However, because in his fourth issue Capaldi challenges the effectiveness of plea counsel, we will consider these claims in the context that plea counsel's ineffectiveness caused Capaldi to enter an invalid plea.

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process

- 5 -

that no reliable adjudication of guilt or innocence could have taken place. **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." **Id.** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner. **Id.** at 533.

With respect to claims that plea counsel was ineffective, we note:

> Ineffective assistance of counsel claims arising from the plea-bargaining process are eligible for PCRA review. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.
>
>> The standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, ... under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating entry of an unknowing, involuntary, or unintelligent plea. This standard is equivalent to the "manifest injustice" standard applicable to all post-sentence motions to withdraw a guilty plea.
>
> **Commonwealth v. Morrison**, 878 A.2d 102, 105 (Pa. Super. 2005) (*en banc*)[.]

**Commonwealth v. Kelley**, 136 A.3d 1007, 1012–13 (Pa. Super. 2016) (some citations omitted). Notably, a PCRA petitioner cannot assert grounds

for withdrawing a guilty plea that contradict his statements made under oath in a guilty plea colloquy. *Commonwealth v. Willis*, 68 A.3d 997, 1009 (Pa. Super. 2013) (citing *Commonwealth v. Turetsky*, 925 A.2d 876 (Pa. Super. 2007)).

Moreover, "[o]ur law presumes that a defendant who enters a guilty plea was aware of what he was doing," and "[h]e bears the burden of proving otherwise." *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003) (citations omitted).

> The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

*Id.* On appeal, this Court evaluates the adequacy of the plea colloquy and the voluntariness of the resulting plea by looking at the totality of the circumstances. *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011).

In addressing Capaldi's first three issues, we note initially that the Commonwealth did not breach the negotiated plea agreement that it reached with Capaldi; it fully complied with all of its obligations thereunder by recommending the trial court sentenced him to an aggregate term of twenty

for forty years of imprisonment.[1]  Rather, the trial court declined to accept the recommendation and imposed a slightly harsher sentence.

The trial court retained the authority to do so without "breaching" any sentencing agreement between the defendant and the Commonwealth.  As this Court has stated:

> To be clear, a trial court may legally impose a harsher sentence than the one agreed upon, even after accepting a plea with a negotiated sentence.  However, when it does so, the trial court must give the defendant the option to withdraw his plea and proceed to trial.

*Commonwealth v. Root*, 179 A.3d 511, 518 (Pa. Super. 2018).  To determine whether this opportunity was offered and the defendant's response, we must review the guilty plea transcript.

Here, at the guilty plea hearing, the PCRA court found that, after it chose to increase Capaldi's sentence, Capaldi was informed he could withdraw his guilty plea, and Capaldi declined the opportunity to do so. The court summarized the pertinent portion of the guilty plea proceedings as follows:

> [Capaldi pled] guilty on April 11, 2023.  During [his] guilty plea, Capaldi testified that he had gone over his guilty colloquy with counsel, and that he had initialed each page and [signed] the last page.  [Capaldi] also testified that he understood he was waiving his right to a trial.  This court expressed its understanding that the Commonwealth and [Capaldi] had entered into a plea negotiation.  This court asked [Capaldi] if he understood this court could reject the negotiation and decide how to sentence [him] as

---

[1] As no breach occurred, we summarily reject Capaldi's claim that his request for relief should be considered outside the ambit of the PCRA.

this court deemed appropriate. [Capaldi] responded that he understood. This court asked [Capaldi] if, knowing that, he still wanted to enter a guilty plea. [Capaldi] responded, "[y]es, your Honor."

[Capaldi] also testified that his attorney had explained to him the maximum penalties for each offense that he had been charged with. He further testified that he understood that his most serious offense, murder in the third degree, carried a maximum penalty of forty (40) years of incarceration.

This court asked [Capaldi] if he understood that, although the Commonwealth had negotiated to run sentences concurrent with one another, this court could still decide to run them consecutively. [Capaldi] responded that he was not aware of that possibility, but accepted it. This court asked if, knowing that possibility, he still wished to enter a guilty plea. [Capaldi] responded that he did.

PCRA Court Opinion, 7/31/24, at 3-4 (footnotes to record and excess capitalization omitted).

Capaldi then informed the trial court that he was aware of the Commonwealth's burden of proof and his appellate rights. He further averred that no one threatened or forced him to plead guilty and that, other than the terms of the negotiated plea agreement, no promises were made regarding his sentence. After the Commonwealth provided a factual basis for the plea, Capaldi acknowledged his guilt.

Next, the Commonwealth presented the terms of the negotiated sentence. Thereafter, the court heard testimony from Emma and several friends and family of the victim. The PCRA court summarized the sentencing portion of the proceedings as follows:

Following brief argument from [Capaldi's] counsel, this court expressed its concerns with the negotiation from the

Commonwealth. This court noted that it would honor most of the terms of the agreement, but expressed its outrage with the fact that [Capaldi] had essentially held the victim's body hostage to use as a negotiating piece with the Commonwealth. This court also highlighted the extremely heinous actions that [Capaldi] committed. Not only had [Capaldi] committed the vicious yet cowardly act of killing his own wife while she was sleeping, but he had dismembered her body, disposing of it in different locations, and lying to the police regarding what happened until a few months later when he finally confessed. However, because [Capaldi] ultimately accepted responsibility and led [law enforcement] to some of the remains of the victim, this court was willing to accept the negotiation.

PCRA Court Opinion, 7/31/24, at 6 (footnotes to record and excess capitalization omitted).

The trial court then sentenced Capaldi in accordance with the sentence negotiation on the first three counts of his convictions. Regarding the remaining two counts, the court deviated from the negotiation by imposing two consecutive 1 to 2-year terms of incarceration, resulting in an aggregate sentence of 22 to 44 years of imprisonment. As the PCRA court then summarized:

> After issuing the above sentences, this court reminded [Capaldi] that this court did not have to honor the negotiation with the Commonwealth and did not have to run the sentences concurrent with one another according to the negotiation. This court told [Capaldi] that for the two counts, the sentences were [] to run consecutively with the other counts, resulting in an additional two years compared to the sentence that he had originally negotiated with his proffer. This court, in an effort to make sure [Capaldi] understood that it had changed some of the terms of the negotiation, asked [Capaldi] if he was still agreeable with the condition that he shall not appeal the sentence or anything else that had occurred on the day of [his] plea and sentencing. [Capaldi] responded, "Yes, your Honor, I'm fine with the terms."

[The Commonwealth] further asked [Capaldi] if he understood that the judge had essentially imposed additional time outside of what he and the Commonwealth had negotiated. [Capaldi] responded that he did. [The Commonwealth] explained that, because of this, [Capaldi] had that opportunity at [that] time, to withdraw his plea and go to trial. When asked if he wished to withdraw his plea and go to trial, [Capaldi] responded that he did not. [The Commonwealth] then asked [Capaldi] if, now that he knew the negotiation was exceeded, he still wished to accept the negotiation, accept the other terms imposed by this court, and proceed with pleading guilty and take the sentence just imposed by this court. [Capaldi] responded in the affirmative, and confirmed that he was fine with what had been discussed and determined for his sentence. This court sought further clarification, asking [Capaldi] if he was in agreement with the terms [of] his proffer, other than the fact that the court added two to four years to the negotiation that he and the Commonwealth had entered into. [Capaldi] responded he was in agreement.

PCRA Court Opinion, 7/31/24, at 7-8 (footnotes to record and excess capitalization omitted).[2]

Our review of record supports the PCRA court's conclusion. "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing," and "[h]e bears the burden of proving otherwise." ***Commonwealth v. Pollard***, 832 A.2d 517, 523 (Pa. Super. 2003) (citations omitted).

The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not

---

[2] An express term of the plea negotiation was that Capaldi agreed to forgo "any direct, collateral post-conviction, state, or federal appeals as a result of this investigation and upon his conviction." Proffer Agreement, 12/8/22, at 1. By filing his PCRA petition and this appeal, it is Capaldi who has breached the agreement.

later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

*Id.* On appeal, this Court evaluates the adequacy of the plea colloquy and the voluntariness of the resulting plea by looking at the totality of the circumstances. *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011).

The totality of the circumstances in this case reveal that Capaldi voluntarily entered his guilty plea knowing that the trial court had imposed a harsher sentence than that negotiated with the Commonwealth. Indeed, at sentencing Capaldi stated he was "accepting the sentence of what it is. And if you change your mind and make it the full 40 [years], I will take it as well. N.T., 4/11/23 at 27. Moreover, although Capaldi is correct in stating that the court never explicitly asked if he wished to withdraw his plea, the Commonwealth informed him of his opportunity to do so.

Finally, Capaldi's reliance upon this Court's recent decision in *Commonwealth v. Gillins*, 302 A.3d 154 (Pa. Super. 2023), is misplaced. In *Gillins*, this Court vacated Gillins' sentence "with the aim of conferring upon him the benefit of the bargain he entered when agreeing to plead guilty in exchange for the promise of concurrently run federal and state sentences." *Gillins*, 302 A.3d at 157. Gillins received this relief, because at the time of plea negotiations and sentencing, both the court and counsel for the parties were unaware that federal jurisprudence held that a state court lacked authority to run a state sentence concurrent to an existing federal sentence.

- 12 -

*Id.* Here, by contrast, Capaldi was fully aware and consented to the trial court exercising its authority to impose a harsher term of incarceration.

Counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Thus, given the above, Capaldi's claim that plea counsel was ineffective in relation to his guilty plea fails.

In his remaining issue, Capaldi presents a layered claim of ineffective assistance of counsel. When making such a claim, a PCRA petitioner "must properly argue each prong of the three-prong ineffectiveness test for each separate attorney." *Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel." *Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa. Super. 2010). "If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Id.*

Here, because we have already rejected Capaldi's claim of plea counsel's ineffectiveness, his layered claim of ineffective assistance likewise fails. *Burkett*, *supra*.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/6/2025