J-A02034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JUSTIN TYLER STEVENSON | : | |
| Appellant | : | No. 177 WDA 2024 |

Appeal from the PCRA Order Entered January 2, 2024
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0001266-2016

BEFORE: KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED: March 27, 2025**

The Commonwealth sought to execute Justin Tyler Stevenson ("Stevenson") for his role in the brutal beating deaths of two victims during a robbery. On the advice of his attorneys, Stevenson avoided the death penalty by pleading guilty to two counts of murder in the second degree and accepted the mandatory sentence of life imprisonment without the possibility of parole ("LWOP"). Stevenson then filed a Post-Conviction Relief Act ("PCRA") petition, alleging that his attorneys caused him to enter an involuntary plea by failing to investigate mitigating evidence that could have been presented during the sentencing phase. The Indiana County Court of Common Pleas ("PCRA court") denied the petition following a hearing. Stevenson appeals this decision; following our review, we affirm.

The record reflects the Commonwealth alleged[1] that on October 27, 2016, members of the Pennsylvania State Police were dispatched to a home to investigate a double homicide. Timothy Gardner was found dead in the downstairs entryway of the residence. The second victim, Jacqueline Brink, was in an upstairs bedroom. Both victims had been beaten to death.

Neighbors supplied information leading the police to interview Nathanial Ray Price, who related the following version of events. Stevenson, Isaiah Scott, and he agreed to rob Gardner. Scott, who had purchased marijuana from Gardner in the past, went to Gardner's home and said he wanted to buy some weed. Gardner went upstairs to get the drugs, and when he came back down Stevenson hit Gardner in the head with a pipe. Price "related that Stevenson just went crazy." Affidavit of Probable Cause at 3. Price stated that Stevenson went upstairs and tossed a safe down the steps. Price heard Brink screaming from upstairs, but he did not offer further details of what may have happened beyond saying he thought both Gardner and Brink were dead by the time the three fled.

Police apprehended Stevenson that same day and he agreed to speak to police. Stevenson's account was similar to Price's with respect to the underlying plan to rob Gardner. He also admitted to striking Gardner with the

---

[1] The guilty plea in this case simply reflected that two people died during a planned robbery. We therefore utilize the affidavit of probable cause to establish the essential facts that the Commonwealth intended to present if the case had proceeded to trial.

pipe. In his account, he only struck Gardner once. When he "drew back to strike Gardner again, however, in the back swing he struck Price in the top of the head. This enraged Price [who] mounted Gardner. [Stevenson] related that Price went crazy." *Id.* at 4. Stevenson claimed that he went upstairs to get the safe, where he encountered Brink, who "asked him not to hurt her." *Id.* Stevenson said he left Brink alone and returned downstairs. He then saw Price go upstairs "and he heard [Brink] screaming." *Id.* When Price came back downstairs, he "mentioned that there could not be witnesses." *Id.* Stevenson believed that Price had killed Brink. *Id.* The three then drove off with the safe to another location, "where they cracked open the safe." *Id.*

The Commonwealth filed charges against all three participants in the robbery. On January 13, 2017, the Commonwealth filed its notice of intent to seek the death penalty against Stevenson. The Commonwealth cited two aggravating factors warranting the death penalty. First, that if it succeeded in obtaining a verdict of murder in the first degree for both victims, at the close of trial Stevenson will have been convicted of another offense for which death was an option. 42 Pa.C.S. § 9711(d)(10) ("The defendant has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable[.]"); *Commonwealth v. Lee*, 662 A.2d 645, 657 (Pa. 1995) ("[W]here a defendant commits more than one first degree murder during a given episode, one murder constitutes an aggravating circumstance

for the other."). Second, that Stevenson committed the killings during a robbery. 42 Pa.C.S. § 9711(d)(6) ("The defendant committed a killing while in the perpetration of a felony.").

Attorney Wendy Williams represented Stevenson for purposes of the guilt phase and pretrial motions, and Attorney Robert Bell was appointed to handle the development and presentation of mitigation evidence to counter the Commonwealth's request to impose the death penalty in the event the case proceeded to the penalty phase. Stevenson filed a motion to sever his case from Price's, and the Commonwealth agreed.[2] Stevenson then litigated several other pretrial motions seeking, inter alia, suppression of evidence. Those motions failed.

On August 24, 2018, upon the advice of his attorneys, Stevenson entered a guilty plea to two counts of second-degree murder and received the mandatory sentence of LWOP.[3]

---

[2] Scott was seventeen and his case apparently proceeded in the juvenile system.

[3] We refer to the advice of his attorneys in the collective as Attorney David Shrager assisted Attorney Williams and represented Stevenson at the guilty plea hearing. Attorney Williams testified that she discussed the plea with Stevenson. N.T., 7/28/2023, at 67.

On May 16, 2019, Stevenson filed a pro se petition for relief under the PCRA, which was denied following an evidentiary hearing on July 28, 2023.[4] Stevenson filed a timely notice of appeal and now raises the following claim for our review:

> Did [Stevenson]'s entry of a plea of guilty resulting in two life sentences in exchange for the withdrawal of the possibility of a death sentence constitute manifest injustice when there was no inquiry into whether [Stevenson] was even eligible for the death penalty and [Stevenson]'s lawyers did not make even minimal inquiry into the 42 Pa.C.S. § 9711(e) mitigating circumstances that could have overcome the Commonwealth's alleged ... aggravating circumstances[?]

Stevenson's Brief at 3.

> Our standard of review is well-settled:

> When reviewing the denial of a PCRA petition, an appellate court must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, a reviewing court is bound by a PCRA court's credibility determinations and its fact-finding, so long as those conclusions are supported by the record. However, with regard to a court's legal conclusions, appellate courts apply a de novo standard.

**Commonwealth v. Drummond**, 285 A.3d 625, 633 (Pa. 2022).

_____

[4] Initially, appointed PCRA counsel filed a "no merit" letter and a petition to withdraw. The PCRA court granted the petition to withdraw in February of 2020, but did not issue a notice of intent to dismiss or otherwise deny the PCRA petition. Stevenson filed several pro se motions over the next year, and on March 29, 2021, the PCRA court denied a petition for an evidentiary hearing without prejudice, which Stevenson appealed to this Court. We quashed, noting that there was no final order denying PCRA review. We directed the PCRA court to appoint counsel on remand. **Commonwealth v. Stevenson**, 280 A.3d 11, *1 (Pa. Super. May 5, 2022) (non-precedential decision).

We first address the nature of Stevenson's claim. We agree with the Commonwealth that Stevenson's claim is a "hybrid or compound issue ... consisting of two distinct claims amalgamated into one." Commonwealth's Brief at 7. The first part of the claim is that his plea was involuntarily entered. The second is that the purported involuntary nature of that plea was based upon counsel's failure to properly advise him.

It is possible to raise a claim that a plea is involuntary based upon some error external to counsel's advice. For example, "when a prosecutor is unable as a matter of law to fulfill a promise made in a plea bargain, a breach of the plea agreement occurs that renders the defendant's guilty plea unknowing and involuntary." *Commonwealth v. Gillins*, 302 A.3d 154, 163 (Pa. Super. 2023). More commonly, though, the alleged involuntary nature of the plea relates to counsel's advice to accept the plea. *See, e.g., Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002) (counsel erroneously informed Hickman that he would be eligible for a boot camp program; "based on an ignorance of relevant sentencing law, counsel's advice was legally unsound and devoid of any reasonable basis designed to effectuate [Hickman]'s interests"). Although Stevenson fails to cite, let alone discuss, ineffective assistance of counsel principles in his brief,[5] it is clear from his

---

[5] Counsel is presumed effective, and the petitioner bears the burden of pleading and proving ineffectiveness. *See Commonwealth v. Rivers*, 786 A.2d 923, 927 (Pa. 2001). The failure to discuss each prong may result in

*(Footnote Continued Next Page)*

- 6 -

argument that he is, in fact, claiming that his guilty plea was the result of his attorneys' ineffective representation. This was also the substance of the claim raised before the PCRA court. *See* Amended PCRA Petition, 6/8/2023, at 6 (alleging that "counsel conducted no mitigation investigation at all" and that he "would not have pleaded guilty and would have insisted on going to trial"); 9 (arguing that "based on merely a small amount of the readily available mitigation evidence, [Stevenson] would not have pleaded guilty and would have insisted on going to trial" (quotation marks and citation omitted)). We therefore examine the claim as one sounding in effective assistance of counsel.

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (quotation marks and citation omitted). The United States Supreme Court has recognized "that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires[.]" *Missouri v. Frye*, 566 U.S. 134, 143 (2012).

---

waiver for inadequate development. *See Commonwealth v. Steele*, 961 A.2d 786, 797 (Pa. 2008) ("[W]here [Steele] has failed to set forth all three prongs of the ineffectiveness test and meaningfully discuss them, he is not entitled to relief, and we are constrained to find such claims waived for lack of development.").

"[W]e will review counsel's performance to see whether it amounted to ineffective assistance of counsel that invalidated [the] guilty plea." *Commonwealth v. Lynch,* 820 A.2d 728, 732–33 (Pa. Super. 2003). To establish that counsel rendered ineffective assistance Stevenson must establish three things: "[(1)] that the underlying claim has arguable merit, [(2)] that counsel's performance was not reasonably designed to effectuate the defendant's interests, and [(3)] that counsel's unreasonable performance prejudiced the defendant." *Id.* at 733. "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Commonwealth v. Spotz*, 870 A.2d 822, 830 (Pa. 2005).

With these principles in mind, we turn to Stevenson's claim that counsel's ineffectiveness rendered his plea involuntary. Stevenson relies on *Commonwealth v. Hodges*, 789 A.2d 764 (Pa. Super. 2000), and *Commonwealth v. Barbosa*, 819 A.2d 81 (Pa. Super. 2003), as presenting analogous circumstances. In *Hodges*, the defendant entered a guilty plea and accepted a sentence of LWOP after the Commonwealth sent notice of its intent to seek the death penalty. Shortly after the entry of the plea, Hodges and his attorney both learned that Hodges had, in fact, been born two years later than they believed, making him fifteen at the time of the crime and thus ineligible for the death penalty. The trial court refused to withdraw the plea, and we reversed: "[T]he plea was based on a maximum sentence that the court had no authority to impose. The entire process of plea negotiations,

- 8 -

therefore, was affected by this grave error." *Id.* at 767. Hodges "pled guilty in order to avoid a maximum sentence which, by law, could not be imposed." *Id.*

In *Barbosa*, the claim arose during collateral proceedings. Barbosa filed a PCRA petition alleging that trial counsel failed to "advise[] him of the permissible maximum sentence or range of sentences he could receive if he went to trial." *Id.* at 82. Specifically, he alleged that he was led to believe that he was potentially eligible for a sentence of life imprisonment under our "three strikes" law. *Id.*; *see* 42 Pa.C.S. § 9714. The PCRA court concluded that Barbosa was not legally subject to that statute. *Barbosa*, 819 A.2d at 83. The PCRA court dismissed the petition without a hearing. We reversed, citing, inter alia, *Hodges* for the proposition that if a defendant "claims that he was threatened with maximum sentences that could not lawfully be imposed" he may be entitled to relief. *Id.* We remanded for "a hearing on the merits of the petition, which should include evidence on Barbosa's ineffectiveness claim." *Id.* at 87.

*Hodges* and *Barbosa* are readily distinguishable. In both cases, there was a **legal** impediment to the imposition of what the defendant believed the maximum sentence could be. In *Hodges*, the defendant was ineligible for the death penalty based on his age; in *Barbosa*, the defendant "was ineligible for 'three strikes' at the time he entered the plea[.]" *Id.*

To place his case within **Barbosa** and **Hodges**, Stevenson would have to show that he was legally ineligible for the death penalty. But he does not make that claim. Instead, he argues that his "lawyers made no inquiry into whether [Stevenson] was even eligible for the death penalty." Stevenson's Brief at 19. He argues that his attorneys failed to "make even minimal inquiry into the 42 Pa.C.S. § 9711(e) mitigating circumstances that could have overcome the Commonwealth's alleged 42 Pa.C.S. § 9711(d) aggravating circumstances." **Id.** These are arguments that address the likelihood of the jury sentencing Stevenson to die, not whether he was legally eligible for the death penalty. Regardless of Stevenson's subjective view that a jury was unlikely to return a verdict of death, the fact remains that death would have been a legally valid verdict. On this basis alone, his claim fails.

Even accepting, arguendo, that there is arguable merit to his claim, Stevenson fails to establish that counsel's advice was unreasonable. Stevenson had the burden of pleading and proving that "the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests[.]" **Commonwealth v. Fulton**, 830 A.2d 567, 572 (Pa. 2003). We conclude that counsels' advice to take the plea was reasonably designed to effectuate Stevenson's interest, as it avoided the death penalty in a case where the evidence of guilt was overwhelming. **See Commonwealth v. Weinstein**, 451 A.2d 1344, 1346 n.2 (Pa. 1982) ("Considering the overwhelming evidence against [Weinstein], coupled with the possibility of a

- 10 -

death sentence, there was assuredly a reasonable basis designed to effectuate [Weinstein]'s interest underlying counsel's advice to accept the plea agreement and not move to suppress the confession."). Instead of focusing on the strength of the Commonwealth's case, Stevenson complains that his attorneys did not arrange an interview with a psychologist, ask questions about his background, examine his medical history, or ask about his mental state or whether he had been suicidal in the month preceding the killings. ***See*** Stevenson's Brief at 7-9. Additionally, Stevenson asserts that his attorneys did not discuss the particulars of the aggravating factors cited by the Commonwealth. ***Id.*** at 10.

"The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" ***Hill v. Lockhart***, 474 U.S. 52, 56 (1985) (quotation marks and citation omitted). There were only two viable "alternative courses of action" in this case: continue litigating the case and proceed to a trial where the Commonwealth intended to seek the death penalty or accept the negotiated guilty plea and eliminate that possibility.

As noted, Stevenson argues that his attorneys failed to investigate various sources of mitigation evidence. He claims that "[i]t violated [his] right to due process to enter a plea of guilty predicated on the threat of a sentence

of death when [Stevenson] had no knowledge of the ... aggravating circumstances that the Commonwealth had alleged." Stevenson's Brief at 21.

That argument fails to address his attorneys' strategic evaluation that a sentence of LWOP was virtually certain. Attorney Williams agreed that if the case proceeded to trial, she was "prepared to argue that Justin Stevenson thought this was just a robbery[.]" N.T., 7/28/2023, at 27.

Q. And you would have argued at trial that it was not he who committed either of these killings; correct?

A. I'm sure that's what we would have argued.

Q. And then in your experience doing these trials, that would result in a verdict of second degree [murder]; correct?

A. I mean, honestly, based on accomplice liability and the killing of a witness and the crime scene photos, I felt that he would have been found guilty of first degree [murder] under the accomplice liability theory at the very least and had been subject to a penalty phase.

*    *    *

Q. Okay. In Justin Stevenson's case, though, would you agree or disagree that you didn't necessarily have overwhelming evidence of guilt of first degree? Would you agree with that?

A. No, I disagree. Based on accomplice liability, I felt this was a second and a first or two firsts. I mean, it was a brutal killing.

*Id.* at 27, 28.

Stevenson asked Attorney Williams, "Am I correct that you did not concern yourself with the mitigation evidence?" She replied, "I mean, not concern myself wouldn't be it. It would be more like decide, okay, if we're lucky enough to go to trial and get two seconds, which was a definite … he's getting two life sentences anyway[.]" *Id.* at 43.

Attorney Williams repeatedly stressed during her testimony that the Commonwealth's evidence establishing Stevenson's guilt was overwhelming. She therefore concluded that it was all but certain that Stevenson would receive a mandatory sentence of LWOP. ***See id.*** at 51 ("[T]here's nobody in the world who … looks at this case and doesn't believe he's going to serve a life sentence on a second-degree conviction in this case."), 55 ("[M]y job was to save his life. He was going to do life anyway. So why risk him being sent to death row[?]"), 76 (Attorney Williams explaining why she advised Stevenson to take the plea: "Why risk a first-degree conviction and a penalty phase if he was going to get the second-degree conviction anyway?"), 87 ("I thought [LWOP] was inevitable."). Accordingly, she concluded that avoiding a potential death sentence was the best possible outcome for Stevenson.[6]

Stevenson does not argue that Attorney Williams was incorrect in her evaluation of the case. Instead, his argument is that he might not have received the death penalty if convicted of first-degree murder. More specifically, he complains that his attorneys failed to supply him with sufficient information to determine whether the jury would have sentenced him to

---

[6] Attorney Williams achieved an additional benefit: the plea agreement was for the trial court to impose concurrent sentences, not consecutive. She explained that her goal "is to get those sentences concurrent so if the law ever changes, they don't have to serve 45 years, get paroled on the first death, and then another 45 years, get paroled on the second death." N.T., 7/28/2023 at 44. Attorney Williams explained that in her experience Stevenson would have likely received consecutive sentences if the case had proceeded to trial.

death. *See id.* at 76 (Stevenson questioning Attorney Williams: "So how would it be possible for Justin Stevenson to make an informed, intelligent, knowing decision about the plea if none of the mitigation issues … were even performed let alone presented for him to evaluate?"). These arguments are all directed to the probability that Stevenson would have received the death penalty. At no point does Stevenson recognize the obvious: if the case proceeds to the penalty phase, the **only** options are death or LWOP. *See* 42 Pa.C.S. § 9711(f)(2) (stating that "the jury shall set forth in writing whether the sentence is death or life imprisonment"). Stevenson's myopic focus on what would have happened at the penalty phase confirms his attorneys' judgment that LWOP was the best possible outcome.[7]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/27/2025

_____

[7] Indeed, Stevenson conceded that he had no expectation of avoiding a sentence of LWOP. *See* N.T., 7/28/2023, at 195 ("Q. Yeah. If you went to trial, how are you not getting second-degree murder? A. I don't know.").